Argued and submitted June 15, affirmed September 28, reconsideration denied November 10, petition for review denied December 28, 1983 (296 Or 237)

BARRETT et al,
*Appellants,*

*v.*

EMANUEL HOSPITAL et al,
*Respondents.*

(A 8011-06238; CA A25440)

669 P2d 835

Wayne Mackeson, Portland, argued the cause for appellants. With him on the briefs was Des Connall, P.C., Portland.

Emil R. Berg, Portland, argued the cause for respondent Emanuel Hospital. With him on the brief were William L. Hallmark, and Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Mildred J. Carmack, Portland, argued the cause for respondents Raymond North, Paul Campbell, Portland Orthopedic Clinic, P.C., and Dr. May-Ho Hung. With her on the brief were Bruce Spaulding, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this action to recover damages for mental and nervous disorders Mr. Barrett allegedly suffered as a result of knee surgery. The defendants are the two surgeons, the anesthesiologist, the hospital where the surgery was performed and the professional corporation which employs the surgeons. Plaintiffs alleged, *inter alia,* that all of the defendants, acting "jointly and in concert," had exclusive control of Mr. Barrett's person and of all instrumentalities used during the surgery.[1] Plaintiffs therefore contend that they are entitled to proceed on the principle of *res ipsa loquitur* against all of the defendants, although they cannot specify which of them or what instrumentality caused the injury. The trial court granted defendants' motions to strike all allegations predicated on *res ipsa loquitur,* apparently on the ground that those allegations did not state a claim. Plaintiffs elected "to stand on the complaint," and they appeal from the trial court's ensuing judgment of dismissal.[2]

---

[1] Plaintiffs' seventh cause of action states in material part:

### "XXXI

"In performing the surgery, defendants Emanuel Hospital, North, Campbell, Portland Orthopedic Clinic and Hung acted jointly and in concert.

### "XXXII

"During the entire course of the surgery, plaintiff was rendered unconscious, and defendants Emanuel Hospital, North, Campbell, Portland Orthopedic Clinic and Hung had exclusive control and custody of the plaintiff's person, the various operating and recovery rooms in which the surgery was conducted, the instrumentalities used and procedures employed in said surgery.

### "XXXIII

"Defendants Emanuel Hospital, North, Campbell, Portland Orthopedic Clinic, and Hung, were negligent in that had due care been exercised during said surgery, no injury as above described would have occurred to plaintiff."

Plaintiffs' second through sixth causes of action alleged that each of the defendants, independently of the others, "had exclusive control and custody of [Mr. Barrett's] person and all instrumentalities used during the surgery." At oral argument, plaintiffs' counsel stated that plaintiffs would rely only on the seventh cause of action, and counsel abandoned the allegations in the second through sixth causes as "a position that can't be defended."

[2] Plaintiffs also made direct allegations of negligence against the defendants. Some or all of those allegations apparently had not been stricken at the time the trial court entered the judgment. However, plaintiffs do not assign as error and do not contend that the court erred by entering the judgment while those allegations remained viable.

Plaintiffs' only contention on appeal and only basis for urging that the court erred by striking the allegations is that, when a surgical patient under a general anesthetic suffers an injury in the operating room which the patient "cannot trace * * * to a specific person or instrument," the *res ipsa loquitur* inference of negligence should arise against all medical and nursing personnel who participated in the surgery.[3] Plaintiffs rely on *Ybarra v. Spangard,* 25 Cal 2d 486, 154 P2d 687 (1944). Defendants respond, *inter alia,* that *res ipsa loquitur* cannot benefit a plaintiff who is unable to show which of several separate defendants was probably responsible for the injury.

The argument plaintiffs make seems to relate more to the sufficiency of the proof they will offer than to the adequacy of the pleadings on which the trial court ruled. However, plaintiffs represented at oral argument that they cannot prove negligence against any of the defendants without the aid of the inference that they argue is applicable. Plaintiffs have in effect construed their own pleadings in such a way that only the proof they now say they will be able to produce is within the scope of the complaint. By doing so, they have also abandoned any alternative bases for holding that some or all of the stricken allegations are sufficient. *See* notes 1 and 2, *supra.* In the light of the way plaintiffs have structured their case, we turn to the arguments on which they rely.[4]

■ Under its traditional formulation, *res ipsa loquitur* permits negligence to be inferred against a defendant if the injury (1) is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) is caused by an agency or instrumentality within the defendant's exclusive control; and (3) is not attributable to voluntary action or contribution by

---

[3] Plaintiffs also argue that, under these circumstances, *res ipsa loquitur* should create a presumption of negligence rather than an inference and should shift the burden of proof to defendants. We do not reach that argument, given our disposition of plaintiffs' principal contention. *But see Watzig v. Tobin,* 292 Or 645, 655, 642 P2d 651 (1982).

[4] The foregoing comments are made only to explain why we reach an issue that may not appear to be the dispositive one in an appeal from a ruling on the sufficiency of a complaint. We do not suggest that plaintiffs have conceded too much. If they cannot offer adequate proof of negligence unless their legal theory is adopted, it is to their credit that they have presented their case on that basis and have not asked us to uphold their complaint on other grounds.

the plaintiff. *See Mayor v. Dowsett,* 240 Or 196, 214, 400 P2d 234 (1965).[5] The more recent Oregon cases have placed the emphasis in connection with the second of those elements on the defendant's conduct vis-a-vis the instrumentality or the injury, rather than on the defendant's possession or control of the instrumentality. Thus, in *Pattle v. Wildish Construction Co.,* 270 Or 792, 797, 529 P2d 924 (1974), the court described the relevant consideration to be whether it appears " 'that the negligence of which the thing speaks is probably that of defendant and not of another' " (citing 2 Harper and James, The Law of Torts 1085, § 19.7 (1956)). In *Watzig v. Tobin,* 292 Or 645, 642 P2d 651 (1982), the court said:

"* * * [R]es ipsa loquitur would seem to require nothing more than evidence from which it could be concluded that the event was of a kind which does not normally occur in the absence of negligence *and that the negligence which caused the event was probably that of the defendant.* * * *" 292 Or at 650-51. (Emphasis supplied.)

The issue in this appeal is whether *res ipsa loquitur* can permit an inference of negligence against all of the defendants notwithstanding plaintiffs' stated inability to prove that the negligence of any particular defendant or defendants was the probable cause of Mr. Barrett's injuries. Under materially similar circumstances, the California Supreme Court answered that question affirmatively in *Ybarra v. Spangard, supra,* where it stated:

"* * * Without the aid of the [res ipsa loquitur] doctrine a patient who received permanent injuries of a serious character, obviously the result of some one's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability. (See *Maki v. Murray Hospital,* 91 Mont. 251, [7 P.2d 228 (1932)].) If this were the state of the law of negligence, the courts, to avoid gross injustice, would be forced to invoke the principles of absolute liability, irrespective of negligence, in actions by persons suffering injuries during the course of treatment under anesthesia. But we think this juncture has not yet been reached, and that the doctrine of res ipsa loquitur is properly applicable to the case before us.

---

[5] Although the fact is not material to this case, we note that the continuing validity of the third element is questionable. *See Watzig v. Tobin,* 292 Or 645, 650-51, 642 P2d 651 (1982).

"* * * * *

"The argument of defendants is simply that plaintiff has not shown an injury caused by an instrumentality under a defendant's control, because he has not shown which of the several instrumentalities that he came in contact with while in the hospital caused the injury; and he has not shown that any one defendant or his servants had exclusive control over any particular instrumentality. Defendants assert that some of them were not the employees of other defendants, that some did not stand in any permanent relationship from which liability in tort would follow, and that in view of the nature of the injury, the number of defendants and the different functions performed by each, they could not all be liable for the wrong, if any.

"* * * But we do not believe that either the number or relationship of the defendants alone determines whether the doctrine of res ipsa loquitur applies. Every defendant in whose custody the plaintiff was placed for any period was bound to exercise ordinary care to see that no unnecessary harm came to him and each would be liable for failure in this regard. Any defendant who negligently injured him, and any defendant charged with his care who so neglected him as to allow injury to occur, would be liable. The defendant employers would be liable for the neglect of their employees; and the doctor in charge of the operation would be liable for the negligence of those who became his temporary servants for the purpose of assisting in the operation.

"* * * * *

"* * * The control, at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation. Plaintiff was rendered unconscious for the purpose of undergoing surgical treatment by the defendants; it is manifestly unreasonable for them to insist that he identify any one of them as the person who did the alleged negligent act.

"The other aspect of the case which defendants so strongly emphasize is that plaintiff has not identified the instrumentality any more than he has the particular guilty defendant. Here, again, there is a misconception which, if carried to the extreme for which defendants contend, would unreasonably limit the application of the res ipsa loquitur rule. It should be enough that the plaintiff can show an injury resulting from an external force applied while he lay unconscious in the hospital;

this is as clear a case of identification of the instrumentality as the plaintiff may ever be able to make." 25 Cal 2d at 490-93.[6]

Although defendants make some attempt to distinguish this case from *Ybarra,* their basic argument is that *Ybarra* is wrong and should not be adopted in Oregon. We agree.

*Ybarra* was decided in 1944. Although modern discovery practice may militate in favor of a contrary assumption, we assume *arguendo* that there is continuing vitality to the point the court made in *Ybarra* and plaintiffs make here that often unconscious victims of negligence in a surgical setting *cannot* establish liability without the aid of an inference that all *possible* actors and instrumentalities were causally involved. However, that point seems to us to beg or distort the question.

It is true that the doctrine of *res ipsa loquitur* exists, at least in part, to enable plaintiffs to establish negligence inferentially when "the specific negligent conduct may not be identified since there is no proof to establish it." *Kaufman v. Fisher,* 230 Or 626, 636, 371 P2d 948 (1962). (Footnote omitted.) However, the Oregon Supreme Court has emphasized that the availability of the *res ipsa loquitur* inference is contingent on the plaintiff's showing that the injury was probably caused by *some* negligent conduct of a particular defendant or defendants. The court stated in *Denny v. Warren,* 239 Or 401, 398 P2d 123 (1964):

"The requirement of the defendant's connection with the harm is fundamental in any discussion of the element of 'control' in *res ipsa loquitur:*

" 'The second requirement for res ipsa loquitur is commonly stated in terms of defendant's exclusive control of the injuring agency. The logical basis for this requirement is simply that it must appear that the negligence of which the thing speaks is probably that of defendant and not of another. * * * The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably "such that the defendant would be responsible for any negligence connected with it." * * *

---

[6] In *May v. Broun,* 261 Or 28, 492 P2d 776 (1972), the Supreme Court found it unnecessary to decide whether to adopt the *Ybarra* rule, but expressly left the question open.

That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door. * * *.' 2 Harper and James, The Law of Torts 1085, 1086, § 19.7 (1956).

"In summary, then, it can be said that the availability of *res ipsa loquitur* depends in part upon circumstances that demonstrate a strong probability that it was the conduct of the defendant rather than that of someone else that caused the injury complained of." 239 Or at 406-07.

*See also St. Paul Fire & Mar. Ins. v. Watkins,* 261 Or 473, 478, 495 P2d 265 (1972); *but see Watzig v. Tobin, supra,* 292 Or at 648-49, and authorities there cited. Furthermore, as the court stated in *Kaufman v. Fisher, supra:*

"Whether the inference of negligence is drawn from specific conduct or simply from the fact that the accident happened, the test of preponderating probabilities is the same; in either case plaintiff can get to the jury if there is a rational basis for concluding that it was more probable than not that the defendant's failure to exercise reasonable care was the cause of the accident." 230 Or at 636. (Footnote omitted.)

■ Reduced to essentials, the rule adopted in *Ybarra* and the rule plaintiffs urge us to adopt is simply that *anything* a plaintiff cannot prove about a defendant's conduct in an operating room should be inferable. In our view, that rule is contrary to what the Oregon cases have consistently and correctly stressed: the *only* inference *res ipsa loquitur* permits is the ultimate fact of negligence, and that inference is permitted only when the plaintiff is able to establish by proof, *inter alia,* the probability that a particular defendant's conduct was the cause of the plaintiff's harm.

■ Plaintiffs make policy arguments to the effect that patients injured in surgical situations may be effectively foreclosed from recovery unless the *Ybarra* rule is adopted and that the only meaningful way of requiring the medical and nursing personnel who were present to disclose what occurred during surgery is by forcing them to rebut their own inferential or presumptive negligence.[7] Assuming that there is substance to the problems plaintiffs raise, we do not agree with their proposed solution. Plaintiffs' objective is to place the risk of loss

---

[7] *See* n 3, *supra.*

on those responsible for treatment, rather than on the patient when the treatment results in unexplained injuries. That objective can be achieved in various direct ways which may warrant societal consideration, *e.g.,* strict liability or some form of *respondeat superior* liability. However, we do not think the objective should be pursued by stretching a permissible inference beyond the point where there are underlying facts other than the result from which it can reasonably be drawn.

Affirmed.