Argued and submitted September 3, 1998, reversed and remanded April 14, petition for review denied August 10, 1999 (329 Or 319)

Maurice FIEUX,
*Appellant,*

*v.*

CARDIOVASCULAR & THORACIC CLINIC, P.C.,
George R. Wilkinson, M.D., and
Rogue Valley Medical Center,
*Respondents.*

(9534-05L3; CA A99966)

978 P2d 429

Stephen C. Hendricks argued the cause and filed the briefs for appellant.

Benjamin M. Bloom argued the cause for respondents Cardiovascular & Thoracic Clinic, P.C., and George R. Wilkinson, M.D. With him on the brief was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Thomas F. Armosino argued the cause for respondent Rogue Valley Medical Center. On the brief were John R. Huttl and Frohnmayer, Deatherage, Pratt, Jamieson, Clarke, & Moore, P.C.

Before De Muniz, Presiding Judge, and Landau and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiff filed this medical malpractice action against his surgeon and the hospital (defendants) after a clamp was left behind his heart following open heart surgery. Plaintiff relied on *res ipsa loquitur* to infer negligence without using expert medical testimony to establish the standard of care. The trial court found that, without expert medical testimony, it could not conclude that leaving a clamp in plaintiff's chest would not have happened in the absence of negligence on the part of defendants. The trial court granted defendants' motions for directed verdict, and plaintiff seeks a reversal of the judgment. We reverse and remand.

The parties stipulated to the following facts. Defendant Dr. Wilkinson (surgeon) performed open heart surgery on plaintiff at Rogue Valley Medical Center (hospital). Three surgical nurses (nurses) were supplied by the hospital. During the surgery, a serrefine clamp[1] slipped off a vein and fell behind plaintiff's heart. During his final inspection at the end of surgery, the surgeon inspected the grafts and suture lines but overlooked the serrefine clamp. At the operation's conclusion, plaintiff's chest was closed and plaintiff was returned to the hospital recovery room. A routine x-ray shortly thereafter revealed the clamp behind plaintiff's heart. A few hours after the first surgery, plaintiff underwent a second surgery where his sternum was again retracted and the serrefine clamp was removed. There were no further complications. The second operation would not have been necessary if the serrefine clamp had been removed during the initial surgery.

At the time of surgery, it was hospital policy to account for sponges and needles, but there was no policy or procedure to account for surgical "instruments." A serrefine clamp is considered an instrument. The surgeon stated in his deposition that it was standard operating procedure not to leave instruments, sharp needles, or sponges in a patient. The surgeon also stated it was standard operating procedure for the surgical team, including the nurses, to account for the instruments "in general terms." However, the nurses did not

---

[1] A serrefine clamp is a small spring forcep used for closing the cut end of an artery or vein during an operation.

place the clamp inside plaintiff's chest. Finally, the surgeon admitted that it is difficult to lose large instruments in the pericardial sac, that the area around the heart is usually inspected carefully before and after surgery, and that the clamp was in a place where he did not see it.

Plaintiff asserted that the surgeon and nurses were negligent and that the hospital was vicariously liable for the alleged negligence.[2] The trial court, however, granted defendants' motions for directed verdict at a pretrial hearing after reviewing the stipulated facts and plaintiff's indication that he would not offer expert medical testimony. The trial court determined that plaintiff's evidence did not, as a matter of law, present a jury question under *res ipsa loquitur*.

■    *Res ipsa loquitur* is a rule of evidence whereby circumstantial evidence may be used to prove ultimate facts. *McKee Electric Co. v. Carson Oil Co.,* 301 Or 339, 348, 723 P2d 288 (1986). More specifically, it allows the jury to infer both negligence and causation, even in medical malpractice actions, if " 'the accident which occurred * * * is of a kind which more probably than not would not have occurred in the absence of negligence on the part of the defendant.' " *Id.* at 353 (quoting *Watzig v. Tobin*, 292 Or 645, 649, 642 P2d 651 (1982)).

■■    Whether *res ipsa loquitur* applies is a matter of law to be determined by the court. *Cummins v. City of West Linn,* 21 Or App 643, 651, 536 P2d 455 (1975). A plaintiff must establish the fundamental elements of the doctrine before an inference of negligence or causation will be permitted, namely, that there is an injury, that the injury "is of a kind which ordinarily does not occur in the absence of someone's negligence," and that the negligence that caused the event was more probably than not attributable to a particular defendant or defendants. *Umpqua Aquaculture, Inc. v. Ron's Welding*, 111 Or App 220, 223-24, 826 P2d 31 (1992) (quoting *Barrett v. Emanuel Hospital,* 64 Or App 635, 638, 669 P2d

---

[2] Plaintiff did not assert direct liability against the nurses but asserted that the nurses were the hospital's employees or agents and, thus, vicariously liable. Plaintiff also alleged that the surgeon was the hospital's agent. Plaintiff asserted vicarious liability on the surgeon's practice, Cardiovascular & Thoracic Clinic. For simplicity, our references to the surgeon also include his practice.

835, *rev den* 296 Or 237 (1983)). In reviewing an order for a directed verdict, we view the evidence and all reasonable inferences in the light most favorable to plaintiff to determine whether plaintiff has presented sufficient evidence on those elements to submit the matter to a jury. *Turnbow v. K.E. Enterprises, Inc.,* 155 Or App 59, 65, 962 P2d 764 (1998).

Defendants argue that the stipulated facts do not establish the elements necessary to permit the inference of negligence allowed under *res ipsa loquitur.* First, they argue that plaintiff's proposed testimony is insufficient to prove his damages. Defendants also argue that expert medical testimony is required to establish the standard of care from which a jury may infer that it is more probable than not (1) that the injury would not have occurred without someone violating that standard of care and (2) that defendants were negligent. Plaintiff maintains that the evidence he presented was competent to establish his injury and the standard of care from which defendants' negligence could be inferred. We agree with plaintiff.

As to the first element of injury and damages, Oregon recognizes that a plaintiff who suffers a physical impact or injury is entitled to claim mental anguish damages. *Harris v. Kissling,* 80 Or App 5, 8-9, 721 P2d 838 (1986). Plaintiff was not required to present expert medical testimony to establish that he was injured by having the clamp left in his chest. It is within a jury's competence to conclude that a second surgery, complete with the physical impact necessary to complete the surgery and all the risks associated with it, constitutes an injury. *Skeeters v. Skeeters,* 237 Or 204, 214, 389 P2d 313 (1964). Plaintiff did not request damages for physical pain and suffering; thus, he is not obligated to put on expert testimony to prove them. In addition, *injured* plaintiffs are entitled to claim damages for mental anguish, which plaintiffs may establish through their own or other lay testimony.[3] Thus, the trial court's order for directed verdicts may not be affirmed on the ground that plaintiff would offer no expert testimony to prove injury and damages.

---

[3] On this review of a directed verdict, we express no opinion as to the sufficiency of evidence at trial to prove plaintiff's allegations of additional pain and delay in healing damages.

Regarding the inference of negligence, plaintiff argues that the surgeon, nurses, and hospital owed him a duty not to leave the serrefine clamp in his chest after surgery. Such a general statement may assert the obvious, but it does not end our analysis. " 'Where risks are inherent in an operation and an injury of a type which is rare does occur, the doctrine [of *res ipsa loquitur*] should not be applicable unless it can be said' " that the injury was due to someone's negligence. *Jeffries v. Murdock,* 74 Or App 38, 44-45, 701 P2d 451, *rev den* 299 Or 584 (1985) (quoting *Siverson v. Weber,* 57 Cal 2d 834, 835, 322 Cal Rptr 337, 372 P2d 97 (1962)). Plaintiff's burden here is to present enough evidence for a jury to "reasonably find * * * that it is more probable than not that the [injury] * * * would not normally occur in the absence of negligence * * *." *Watzig,* 292 Or at 651.

■　　　Providing a rational basis from which to infer negligence does not always require expert testimony in medical malpractice cases. The Supreme Court has noted:

> " 'Expert testimony is an indispensable part of plaintiff's case *only* when the average juror cannot be expected to understand the issues without that kind of assistance. It is not required simply because the circumstances are outside the average juror's experience if the other evidence is such as to present the issue in terms which the jury can be expected to understand.' "

*McKee,* 301 Or at 350 (quoting *Hall v. State,* 290 Or 19, 27, 619 P2d 256 (1980)) (emphasis added). Though we have stated that "in the great majority of [medical malpractice] cases expert testimony is required," we nevertheless believe that it is within the capability of a jury to ascertain that a clamp is not normally left inside a patient unless someone was negligent. *Jeffries,* 74 Or App at 43; *see also Piehl v. The Dalles General Hospital,* 280 Or 613, 618-19, 571 P2d 149 (1977) (a jury could assess whether leaving a laparotomy sponge in a patient was negligent); *Mayor v. Dowsett,* 240 Or 196, 215, 400 P2d 234 (1965) (the "most obvious illustration of the use of the doctrine [of *res ipsa loquitur*] in medical malpractice cases is, of course, where a foreign object, such as a sponge or a needle, is left in the patient's interior at the time of surgery").

Defendants' efforts to distinguish the serrefine clamp from other applications of *res ipsa loquitur* where objects were left in patients after surgery are not persuasive. Neither is the argument that the instrument could have been left without negligence. The surgeon testified, at his deposition, that it was not the usual medical procedure to leave a clamp in the patient and that it is "difficult to lose a large instrument inside the pericardial sac." While it appears that the serrefine clamp is smaller than many instruments, the common-sense inference, supported by the surgeon's testimony, is that the clamp would be found and removed by a reasonable search of the area and that, if circumstances necessitated leaving the clamp within plaintiff's body for a valid medical purpose, evidence of those circumstances could overcome the inference of negligence. *See Hall*, 290 Or at 28 (plaintiff not required, in order to make a *prima facie* case, to negate the possibility of special circumstances that made defendant's conduct reasonable, but defendant may produce evidence to rebut a permissible inference of negligence). Therefore, expert medical testimony is not required here to allow an inference of negligence.

■ For *res ipsa loquitur* to apply, the inference of negligence must be attributable to a particular defendant, *Peters v. City of Medford,* 109 Or App 26, 31, 818 P2d 517 (1991), and it is " 'plaintiff's task to fix that negligence upon the defendant,' " *Denny v. Warren,* 239 Or 401, 405, 398 P2d 123 (1964). Plaintiff does not have to eliminate other possible causes, nor is he required to specify the particular manner in which defendant was negligent. *Cummins,* 21 Or App at 649. However, a plaintiff cannot expect "that *anything* a plaintiff cannot prove about a defendant's conduct in an operating room should be inferable." *Barrett,* 64 Or App at 642. Again, we look to whether plaintiff has presented enough evidence to " 'afford a rational basis for concluding that the cause of the accident was probably' " due to defendant's negligence. *Id.* at 641 (quoting *Denny*, 239 Or at 407).

■ Traditionally, a defendant's negligence was established only by showing that the defendant had exclusive control of the instrument causing injury. *Id.* at 638. However, we recognize that there are bases from which to infer probable responsibility that do not require proof of exclusive physical

control or custody by a single defendant. *Denny,* 239 Or at 407; *see also Watzig,* 292 Or at 651. Rather, to attach likely responsibility for an injury, we focus on "the defendant's conduct *vis-a-vis* the instrumentality or the injury, rather than on the defendant's possession or control of the instrumentality." *Barrett,* 64 Or App at 639. Thus, establishing causation may be accomplished by a jury's inference based either on a showing of some specific cause of injury within defendant's responsibility or on a showing that defendant was responsible for all reasonably probable causes of the accident. *Denny,* 239 Or at 406.

■ ■ We also recognize that *res ipsa loquitur* cases may have multiple defendants to whom the *res ipsa loquitur* inference can attach if the plaintiff can trace the probable negligence to each of the defendants. *Umpqua Aquaculture,* 111 Or App at 224. Defendants argue that applying *res ipsa loquitur* to both the nurses and the surgeon is impermissible because it shifts to defendants the burden of proving who was directly negligent. Defendant is correct in asserting that in alternative liability cases we will not apply *res ipsa loquitur* to shift the burden of proof to defendants. The Supreme Court in *Senn v. Merrell-Dow Pharmaceuticals,* 305 Or 256, 269-70, 751 P2d 215 (1988), explained that:

> "The effect of applying a rule of alternative liability to a case in which neither defendant is able to produce exculpatory evidence is to impose liability where the probability of causation is 50 percent or less ('as probable as not' or 'less than probable') as opposed to the traditional 50+ percent ('more probable than not') preponderance of evidence standard and to impose liability on all defendants when in fact only one of them could have caused plaintiff's harm."

*See also Barrett,* 64 Or App at 642-43. Here, where both the surgeon and nurses could have contributed to the one injury, so long as plaintiff can prove that each of the defendants' negligence was the probable cause of his injury, then *res ipsa loquitur* can apply. *Umpqua Aquaculture,* 111 Or App at 224-25.

■ We think it obvious that the doctrine of *res ipsa loquitur* applies to the surgeon. The surgeon admitted in his deposition that he was responsible for searching plaintiff's body

cavity to remove instruments, needles, and sponges. Given this evidence of direct responsibility, an inference can easily be drawn that it is more probable than not that his failure to search carefully caused the clamp to remain behind plaintiff's heart, requiring a second surgery for removal. *See Piehl,* 280 Or at 618-19 (where a "jury of laymen could find that even a summary 'poking around' for all the sponges which could be 'seen or felt' would, in the exercise of ordinary care," reveal the laparotomy sponge in patient's abdomen); *Nicholson v. Sisters of Charity,* 255 Or 251, 253, 463 P2d 861 (1970) (where regardless of who had the duty to take care of and account for the instruments, the doctors had exclusive actual control of everything that went in and came out of the body cavity and could be directly liable).

Surgeon argues that Oregon courts have rejected the "Captain of the Ship" doctrine and that we therefore cannot presume that he is responsible for the acts of other hospital employees assisting him. *Holger v. Irish,* 316 Or 402, 851 P2d 1122 (1993). However, *Holger* rejected only the notion that a doctor could be held either directly liable or liable on a *respondeat superior* theory where there was (1) no evidence of the doctor's personal responsibility for the instrumentality causing the injury and (2) no evidence of the doctor's supervision or control over the nurses' operation of the instrumentality. *Id.* at 412-13; *see also May v. Broun,* 261 Or 28, 40, 492 P2d 776 (1972). Because we have evidence of the surgeon's probable direct negligence, we reverse the directed verdict in favor of the surgeon and remand.

■ Negligence can also be inferred against the nurses under the *res ipsa loquitur* doctrine. As discussed earlier, the nurses, as employees of the hospital, owed a duty to plaintiff not to leave metal instruments in his chest cavity after surgery. The surgeon's deposition, which indicated the nurses were responsible for accounting for instruments "in general terms," connects the nurses to the clamp. While the hospital had no official policy establishing specific procedures that the nurses were required to take, such a policy is not necessary where the surgeon's testimony is competent evidence to establish the standard operating procedure for the nurses. Thus, plaintiff has provided evidence that the instrument causing the injury was within the nurses' responsibility.

*Denny,* 239 Or at 406. Even though a jury could infer that the nurses were not negligent, given their general duty to plaintiff and their responsibility to account "in general terms" for the instruments, we cannot say "that the jury could not reasonably come" to the conclusion that the nurses were more probable than not negligent in failing to ensure that the instrument was accounted for after surgery and removed from plaintiff's chest. Prosser and Keeton, *Torts,* 248 (5th ed 1984). We reverse the directed verdict in favor of the hospital and remand.

█     Because we reverse and remand the malpractice action against the surgeon, the hospital may also be vicariously liable for the surgeon's alleged negligence if he was acting as the hospital's agent. The hospital argues that the pleadings and stipulated facts fail to prove that the surgeon was acting as an agent of the hospital, and thus the directed verdict for the hospital should be affirmed in part on the issue of vicarious liability for the surgeon's conduct. The sole basis for the trial court's directed verdicts in this case was the initial and dispositive concern about the lack of expert testimony on the standard of care and damages. Neither party was given the opportunity to argue or present evidence on the agency issue. We decline to affirm a directed verdict on an alternate ground based on insufficient evidence regarding an issue for which no opportunity to present evidence was provided. *See Bush v. Greyhound Lines, Inc.,* 295 Or 619, 622-23, 669 P2d 324 (1983) (proper case for affirming trial court decision on another ground is where opposing party enjoyed the opportunity to argue the underlying issues and facts which provide the basis for alternate ground of affirmance); *State v. Kruchek,* 156 Or App 617, 624, 969 P2d 386 (1998) (court refused to consider state's alternate ground for affirmance because the factual record was developed insufficiently below).

Reversed and remanded.