Argued and submitted December 6, 2001, Riverdale High School, Marylhurst, reversed and remanded May 8, 2002

## Kenneth M. OSTRANDER,
### *Respondent,*

*v.*

## ALLIANCE CORPORATION,
### an Oregon corporation,
### *Appellant.*

### 9809-06885; A110739

45 P3d 1031

James M. Callahan argued the cause for appellant. With him on the briefs was Callahan & Shears, P.C.

Rick Klingbeil argued the cause for respondent. With him on the brief was Jolles & Bernstein, P.C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant Alliance Corporation, a road construction company, appeals from a judgment in favor of plaintiff in this civil negligence case. A jury found defendant liable for plaintiff's injuries, which occurred when plaintiff, while riding his motorcycle, drove over a steel plate in the road that had been installed by defendant and fell. Defendant contends that the trial court erred in four particulars and that we should reverse the judgment and remand for a new trial. We reverse and remand.

In the fall of 1996, defendant was hired by the City of Portland to assist with a sewer excavation project at the intersection of NE Portland Highway and NE Cully Street. Defendant had several crews working at the site and was using several white Ford pickup trucks as part of the project. Because of the demands at rush hour for use of lanes of the highway, the city imposed a daily 4:00 p.m. deadline, at which time all of defendant's equipment and crews had to be finished working and removed from the site.

Part of defendant's work required cutting trenches across the street. On the day of the accident, the job required defendant's employees to cut the trench, do sewer work, cover the trench with steel plates, install "cold patch" asphalt around the edges of the plates, perform dust containment measures, and then leave the work site by the deadline. A city inspector confirmed in his daily log that the work site was cleared on time, and he also left the site before 5:00 p.m.

At approximately 5:20 p.m., plaintiff rode into the construction area on his Honda Goldwing motorcycle in a line of heavy traffic. A white Ford pickup with construction equipment in it was stopped in the left lane of the street at the construction site. The cars in the line of traffic were braking suddenly and merging into the right lane to avoid running into the back of the pickup. As plaintiff followed the car in front of him, he lost control of his motorcycle as he crossed over the plates and fell. Several other motorists saw the white pickup, the traffic stopping suddenly, and plaintiff's accident. However, no witness saw any person associated with the white

pickup, nor could any witness identify the license plate number of the vehicle. Plaintiff sustained serious injuries to his knee and leg. Police officers and paramedics were called to the scene of the accident, but by the time they arrived, the white pickup was gone.

Plaintiff was admitted to the hospital. On his admission chart, West, a nurse, wrote a note to the effect that she smelled the strong odor of alcohol "by-products" on plaintiff's breath. No doctor or other emergency personnel made such an observation. After x-rays were taken and before plaintiff was sedated, he saw his wife, who had just arrived at the hospital. He told her that all he could remember about the accident was seeing "something off the ground four to five inches." At trial, plaintiff testified that he remembered nothing about the accident. In response to her conversation with plaintiff at the hospital, plaintiff's wife went to the accident scene the next morning. She testified at trial that she observed that the edges of the steel plates near the intersection were "bouncing" up in response to the traffic crossing over them. She took pictures of the plates before defendant's crew arrived to begin work.

As a result of the accident, plaintiff brought this action against defendant, alleging negligence in four particulars: (1) the failure properly to place and secure the steel plates in place; (2) the failure properly to place signs and barricades around the white pickup truck in compliance with the Manual of Uniform Traffic Devices; (3) the failure to post warnings concerning the steel plate; and (4) the failure to undertake dust control measures to ensure that the steel plates would not become slick. Defendant, in its answer, denied that the white truck belonged to it. It also claimed that plaintiff was negligent in failing to maintain a proper lookout, in failing to maintain control, in failing to maintain a reasonable rate of speed, and in operating the motorcycle under the influence of intoxicants. Before trial, plaintiff moved to exclude the evidence of West's chart note and her testimony, claiming that he had consumed only one 12-ounce beer two hours before the accident and that admission of that evidence would be unfairly prejudicial. The trial court deferred its ruling until trial.

When plaintiff's wife testified at trial, she was asked about her conversation with plaintiff at the hospital. Defendant objected on the basis of hearsay, but the trial court overruled defendant's objection. Plaintiff's wife then testified before the jury that plaintiff told her that "he'd seen something off the ground four to five inches" when she first saw him at the hospital. Before plaintiff rested his case-in-chief, the trial court held a hearing out of the presence of the jury regarding the admissibility of the evidence of the odor of alcohol on plaintiff's breath when he arrived at the hospital. The parties initially contemplated stipulating to West's testimony, and defendant was prepared to offer the stipulation and the chart note as defendant's offer of proof. The trial court then asked whether plaintiff should have a chance to cross-examine West, and the parties agreed to have West testify as part of the offer of proof. West was not immediately available. Plaintiff offered evidence out of the presence of the jury that he believed negated the relevance of West's chart note. That evidence consisted of testimony from Dr. Grossman and the investigating officer, and it tended to show that one beer could not have impaired plaintiff. After the trial court heard plaintiff's evidence, it made a preliminary ruling sustaining plaintiff's objection to defendant's evidence of an odor of alcohol on plaintiff's breath. When West was available to testify, defendant offered West's testimony and her chart note as part of the offer of proof. West identified her chart note and testified as to her observations about the odor on plaintiff's breath. The trial court ultimately ruled,

> "There needs to be other evidence beyond what this woman testified to, to introduce alcohol into this case. If there's going to be evidence from some bartender that the guy had three or four or five beers, or where he came from directly before the accident, or if there had been evidence of a witness saying he was fishtailing down the street, and not paying attention or whatever. But there isn't any of that. There's some subjective appraisal about the strength of an odor, which is far outweighed by any—by the prejudicial introduction into this case of alcohol, even if it is probative in any way, which I find [it is] not. But even if it could be argued to be probative in any way, it's just outweighed by the prejudicial effect. Unless you can do better than that with evidence of alcohol, [defense counsel], this witness's testimony would be excluded."

Plaintiff rested. At the close of plaintiff's case-in-chief, defendant moved for a directed verdict as to the allegation of the alleged failure to place signs around the white truck, arguing that plaintiff had not produced sufficient evidence to allow the jury reasonably to infer that the white truck belonged to defendant. The court denied that motion. Defendant also asked the court to direct a verdict as to the allegation regarding dust control measures. The court allowed that motion. Finally, defendant moved for a directed verdict as to the allegation that its failure to place "obstruction ahead" signs on the road before the steel plates was a violation of the Manual of Uniform Traffic Control Devices. The court denied that motion. Defendant then put on its case-in-chief. The jury found defendant 51% at fault and plaintiff 49% at fault. Defendant appeals from the resulting judgment that awarded damages to plaintiff.

**1.** Defendant first argues that the trial court erred in allowing the specification of negligence involving the lack of precautions surrounding the white pickup truck to go to the jury. It argues that the jury could not reasonably have inferred from the evidence that the truck belonged to it. That allegation of negligence was sufficient to go to the jury if, by giving plaintiff the benefit of all reasonable inferences that can be drawn from the evidence, a factfinder could reasonably infer that the truck belonged to defendant. *See, e.g., Fieux v. Cardiovascular and Thoracic Clinic, P.C.*, 159 Or App 637, 646, 978 P2d 429, *rev den* 329 Or 318 (1999).

We find instructive what the Supreme Court said in administrative context in *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271-72, 639 P2d 90 (1981). There, the court explained:

> "An inference has two parts: a primary fact plus a deduction. The evidence directly establishes only the truth of the primary fact or facts from which an inference may be derived * * *. Rational bases may exist for more than one inference to be drawn from the same primary fact, and the factfinder * * * has the task to decide which one to draw. The court does not substitute its judgment as to which inference should be drawn, but it must review for the existence of a rationale."

In this case, the jury could properly infer from the evidence that plaintiff carried his burden of persuasion that the white truck belonged to defendant. Bass, a truck driver, witnessed the accident. He described the truck as a "Ford pickup truck with a small utility trailer," that it had a utility bed on it, and he said that he did not see anyone near the truck. He testified that the truck "was in the location that, to me, they were doing something with [a second steel plate.]" On cross-examination, he testified that he did not think the white truck belonged to a utility company because he did not see any logo on the side and that "this truck had no signs that I could respond to." When confronted with the fact that defendant's trucks also had decals, he explained that he did not have a side view of the truck but that he did not remember seeing any logo. Another eyewitness to the accident, Metzler, recalled seeing the white truck in the left lane and that "it looked like it was a vehicle that was involved in the construction at the site. It had bars, cones and other construction utility items on it." He also explained that he saw "bars, handles to tools of some kind" in the truck. He did not recall seeing any letters or logos on the door of the truck.

In addition, Miotke, a former employee of defendant, testified that defendant had mostly white pickups and that it also had a small yellow flatbed trailer. Miotke also testified that the yard where defendant stored its equipment and vehicles was near the work site, that it was a fenced off area, and that defendant's employees were permitted to remain in that yard after the work site itself had been reopened to traffic. Also, Edwards, the foreman of defendant's crew that installed the plates in question, testified that defendant had more than one white Ford pickup, that the workers or the foreman could drive them, and that they were accessible after hours if a person had keys to the locked yard and to the vehicle.

The above evidence would permit a factfinder reasonably to infer that the white truck that the witnesses saw belonged to defendant. The facts that defendant owns several white Ford pickups similar in appearance to the truck observed at the scene of the accident, that defendant's trucks were stored less than a mile away and were accessible to defendant's employees, that they were in use on the project

on the day of the accident, that the truck at the scene was at the work site, that it had construction equipment in it, and that it was marked off by three cones, are all facts that make reasonable the inference that the truck belonged to defendant. As a result, we hold that the trial court did not err in submitting to the jury the allegation of negligence that depended on defendant's ownership of the white pickup.

Defendant's second and third assignments of error are based on the trial court's rulings excluding evidence of the odor on plaintiff's breath at the hospital. In the offer of proof, West explained that she believed the odor that she smelled from plaintiff came from alcoholic beverages. She explained that she knew the difference between a "faint trace of alcohol and a strong odor of alcohol" and that the odor on plaintiff's breath was "very noticeable." She said that it was possible that the odor had come from the consumption of just one drink but that, "if you had had drinks three, four hours prior you wouldn't have that strong odor."

■■  We first analyze the admissibility of the evidence under OEC 401,[1] which provides:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In *Christianson v. Muller*, 193 Or 548, 552, 239 P2d 835 (1952), *overruled on other grounds by Beglau v. Albertus* 272 Or 170, 536 P2d 1251 (1975), the court commented on the relationship between the consumption of alcohol and the law of negligence as it pertains to motorists:

> "Upon the questions of whether the [allegedly intoxicated party] was maintaining a proper lookout, was keeping her car under control or was traveling at a high or unlawful rate of speed, any evidence tending to show intoxication of the driver or that the driver was under the influence of intoxicating liquor would be admissible, although not specially pleaded. * * * However, before one can be said

---

[1] We construe OEC 401 in these circumstances in light of the common law that informed its enactment. *See Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998) (context includes preexisting common law).

to be under the influence of intoxicating liquor, it is necessary for someone to testify that some one of the effects of such drinking was perceptible to him * * * or that there be other testimony evidencing such a condition." *Christianson,* 193 Or at 552 (citations omitted).

The odor of alcohol on a person's breath is evidence of consumption of alcoholic beverages by that person. Before physical impairment from the alcohol can be inferred from the fact of consumption, however, there must be some other fact in evidence providing a nexus between the consumption and the claim of negligence. *Boner v. Matthews,* 225 Or 500, 355 P2d 285 (1961); *see also State v. Kolendar,* 100 Or App 319, 786 P2d 199, *rev den* 309 Or 698 (1990) (odor of alcohol together with driver's inattention to malfunctioning headlight gave officer a reasonable suspicion that the defendant was driving while impaired).[2] In other words, evidence of alcohol consumption is not relevant to the issues in a negligence case under OEC 401 unless it can be reasonably inferred from the amount consumed, or from other evidence, that the alcohol caused perceptible effects on the party who is claimed to be negligent.

In *Jenson v. Spencer,* 269 Or 411, 419, 525 P2d 153 (1974), the Supreme Court discussed some of the facts that are sufficient to permit a reasonable inference of impairment. It said:

"In prior cases we have held that various fact situations allow the jury to infer that the defendant's ability to drive was impaired by his prior consumption of alcohol. Such sufficient evidence has taken the form of:

"(1) Consumption by the defendant of a substantial quantity of alcohol shortly before an accident,

"(2) A showing of a lesser amount of alcohol consumption plus evidence of:

"(a) prior erratic driving, or

"(b) slurring of speech, staggering, bloodshot eyes, or difficulty controlling movement, or

---

[2] *See also State v. Vorseth,* 100 Or App 359, 786 P2d 217 (1990).

"(c)  the occurrence of an accident, the facts of which suggest that defendant's driving was impaired.

"(3)  Testimony from witnesses that the defendant was intoxicated and smelled of alcohol.

"Moreover, such consumption of alcohol must be at a time not too remote from the happening of the accident to support an inference that the drinking had an effect on the defendant's driving.

"In all of these fact situations, we have been concerned with the validity and strength of an inference that the defendant's lack of due care was in some way connected to his prior consumption of alcohol. If there is evidence of a substantial consumption of alcohol or evidence of consumption of a smaller amount but corroboration by external manifestations of such an influence, then an inference that the defendant's conduct was affected by his consumption is allowed." (Citations and footnotes omitted.)

█     There are two facts operating in combination in this case that would permit a jury reasonably to find a correlation between the odor of alcohol on plaintiff's breath and the operation of his motorcycle. First, the chart note, if the jury believed West, would establish that the odor was "strong," permitting an inference that plaintiff had consumed significant amounts of alcohol. Second, there is the fact that plaintiff ran into a steel plate on a road that was "off the ground four to five inches" without stopping or avoiding it. From those facts, the jury reasonably could infer that plaintiff did not perceive, or was unable to avoid, an obvious hazard because of the alcohol he had consumed. We conclude that the evidence of the chart note and West's testimony was relevant under OEC 401 on the issues of whether plaintiff maintained a reasonable lookout or reasonable control of this motorcycle.

█     The trial court may have excluded the evidence under OEC 403, which provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by considerations of undue delay or needless presentation of cumulative evidence."

The claimed prejudice, as characterized by plaintiff, is that "each juror will look to his or her personal lay beliefs and emotional prejudices to form a conclusion concerning the causal effect of alcohol in this case." As an initial matter, we note that there is nothing impermissible about a jury inferring that alcohol can cause a driver of a vehicle to become impaired. *See Skeeters v. Skeeters*, 237 Or 204, 214, 389 P2d 313 (1964) ("Certainly, a function of the jury is to apply the ordinary experience of mankind to the disputed facts and arrive at the conclusion their reasoning dictates."). Moreover, as the Supreme Court noted in *State v. O'Key*, 321 Or 285, 321, 899 P2d 663 (1995),

> "[i]n the context of OEC 403, 'unfair prejudice' does not mean 'evidence [that] is harmful to the opponent's case—a central reason for offering evidence.' Rather, it means an undue tendency to suggest a decision on an improper basis, commonly although not always, an emotional one. 'Unfair prejudice' describes a situation in which the preferences of the trier of fact are affected by reasons essentially unrelated to the persuasive power of the evidence to establish the fact of consequence." (Citations omitted.)

We conclude that admission of West's testimony and the chart note would not have unfairly prejudiced plaintiff within the meaning of OEC 403. The trial court appears to have rejected the proffered evidence on the basis that it believed it to be outweighed by plaintiff's controverting evidence. However, that is not the test that OEC 403 imposes. Rather, OEC 403 requires a court to assess whether the evidence will have an undue tendency to cause the jury to decide the case on an improper basis. To the extent that the trial court applied the rule properly, we disagree with its conclusion. We do not believe that defendant's evidence would so inflame the passion of the jury that it could not decide the case on the facts presented to it. Whether perception or judgment has been impaired by the consumption of alcohol is a common issue routinely considered by juries in civil and criminal cases, and we perceive no reason why this case differs from the norm. We conclude that the trial court erred in

excluding the evidence under OEC 401 and OEC 403, and it follows that the judgment must be reversed on those grounds.[3]

■　Although our disposition of the second and third assignments of error requires reversal, we comment on defendant's fourth assignment of error because the issue may arise in a new trial on remand. In the fourth assignment of error, defendant asserts that the trial court erred in admitting hearsay testimony from plaintiff's wife about the cause of the accident. She was permitted to testify, over defendant's objection, that plaintiff told her that he had seen something four to five inches off the ground that had caused him to crash. Defendant argues that the trial court's ruling was error. Plaintiff counters that the evidence was offered to rebut defendant's argument that plaintiff and his wife obtained an attorney and began an investigation without a good faith basis.

OEC 801(3) defines hearsay as "[a] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Clearly, the statement is an out-of-court declaration of plaintiff, offered through plaintiff's wife at trial, but the parties disagree about whether it was offered for the truth of the matter asserted or whether any hearsay exception applies. When the court made its ruling during trial as to the admission of the statement, it referred to a discussion, not reflected in the record, that occurred in chambers and then said that the "[o]bjection is overruled" without further explanation. Nothing else in the record explains what happened during the discussion in chambers or the basis for the ruling. The court may have believed that the statement was admissible as nonhearsay evidence or constituted an exception to the hearsay rule. It may also have ruled that the evidence was admissible, contingent on its being tied to other evidence to be offered later in the trial. Because of the lack of a record below, we are unwilling to decide whether the admission of the statement was error, nor do we comment on the legal adequacy of plaintiff's argument for admissibility. It

---

[3] We note that, despite the exclusion of the evidence, the jury found plaintiff 49 percent negligent.

suffices for purposes of this appeal to state that, if the testimony is again offered in a new trial, objected to, and admitted, the basis of the ruling should be contained in the record to make judicial review of the ruling possible.

Reversed and remanded.