**Filed: September 22, 2011**

IN THE SUPREME COURT OF THE STATE OF OREGON

CLARENCE D. LASLEY,
as Personal Representative for the ESTATE OF
MARK ALAN LASLEY,

Petitioner on Review,

v.

COMBINED TRANSPORT, INC.,

Respondent on Review,

and

JUDY MARIE CLEMMER,

Respondent on Review.

(CC 0608-08260; CA A137222; SC S058762)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 2, 2011.

Stephen C. Hendricks of Hendricks Law Firm, P.C., Portland, argued the cause and filed the brief for petitioner on review.

Allyson S. Krueger of Hitt Hiller Monfils Williams, LLP, Portland, argued the cause and filed the brief for respondent on review Combined Transport.

Lindsey H. Hughes of Keating Jones Hughes, P.C., Portland, filed the brief for *amicus curiae* Oregon Trucking Associations, Inc.

Shenoa L. Payne of Haglund Kelley Jones & Wilder, LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

WALTERS, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

DEMUNIZ, C.J., filed a dissenting opinion, in which Durham J., joined.

*Appeal from Multnomah County Circuit Court, John Wittmayer, Judge. 234 Or App 11, 227 P3d 1200, *adh'd to on recons*, 236 Or App 1, 237 P3d 859 (2010).

WALTERS, J.

In this case we decide evidentiary and pleading questions that arose in the trial of a multi-defendant negligence case. Plaintiff, decedent's father, brought this case against defendants Combined Transport, Inc. (Combined Transport) and Judy Clemmer (Clemmer). On the day that decedent died, a truck owned and operated by Combined Transport lost part of its load of large panes of glass on the I-5 freeway. During the clean-up, traffic backed up and decedent was stopped. Clemmer drove into decedent's pickup, causing leaks in its fuel system. The ensuing fire killed decedent. Combined Transport denied that it was negligent and that its conduct foreseeably resulted in decedent's death. Clemmer admitted that she was negligent in driving at an unreasonable speed and in failing to maintain a proper lookout and control. Clemmer also admitted that her negligence was a cause of decedent's death. Based on the pleadings, the trial court granted plaintiff's motion *in limine* to exclude evidence that Clemmer was intoxicated at the time of the collision. The jury rendered a verdict against both defendants, finding Combined Transport 22 percent at fault and Clemmer 78 percent at fault for plaintiff's damages.

Combined Transport appealed and the Court of Appeals reversed, concluding that the trial court had erred in excluding the evidence of Clemmer's intoxication. The Court of Appeals held that that evidence was relevant to two issues:

"Although Clemmer admitted that she was negligent, the jury was required to consider evidence of the circumstances relating to the accident to determine whether Combined Transport's negligence was a substantial factor in causing decedent's death and, if so, to apportion fault between defendants. Clemmer's intoxication was relevant to those determinations.

1

*See Lyons v. Walsh & Sons Trucking Co., Ltd.,* 183 Or App 76, 84, 51 P3d 625 (2002), *aff'd,* 337 Or 319, 96 P3d 1215 (2004) (holding that '[w]hether any particular cause, or any individual actor's conduct, is sufficiently "substantial" to warrant the imposition of liability depends, properly, on a consideration of the whole'). Accordingly, the trial court erred in excluding evidence of Clemmer's intoxication."

*Lasley v. Combined Transport, Inc.,* 234 Or App 11, 20-21, 227 P3d 1200, *adh'd to on recons,* 236 Or App 1, 237 P3d 859 (2010). On reconsideration, the Court of Appeals clarified its opinion:

"First, the evidence of intoxication is relevant to the jury's 'substantial factor' analysis because it is relevant to the cause of the accident. There is an adequate factual nexus between the testimony concerning the quality of Clemmer's driving and her consumption of alcohol to allow the jury to make the determination that the alcohol affected her ability to control her vehicle and keep a proper lookout. That, in turn, could affect the jury's determination of what caused the accident. *Ostrander v. Alliance Corp.,* 181 Or App 283, 291, 45 P3d 1031, *rev den,* 335 Or 104 (2002). Accordingly, Clemmer's intoxication is relevant to the cause-in-fact determination regarding the conduct of Combined Transport, because the jury must consider the 'totality of potentially causative circumstances' in making that determination. *Lyons,* 183 Or App at 84.

"On the other hand, the evidence of intoxication is relevant to the apportionment of fault, because it shows blameworthiness. The considerations announced in *Sandford v. Chev. Div. Gen. Motors,* 292 Or 590, 608, 642 P2d 624 (1982), which are quoted in our original opinion, *Lasley,* 234 Or App at 21-22, regarding the relevance of Clemmer's previous driving history for the purpose of apportionment of fault, were also pertinent to the relevance of Clemmer's intoxication for the same purpose. The evidence of Clemmer's intoxication shows the degree of Clemmer's departure from the standard of care of a reasonable person, and, accordingly, is a proper consideration for the jury in apportioning fault."

236 Or App at 4.

We allowed plaintiff's petition for review. For the reasons we shall explain, we decide that evidence of Clemmer's intoxication was not relevant to the issue of

whether Combined Transport's negligence was a cause of decedent's death but was relevant to the issue of apportionment of fault. We affirm the decision of the Court of Appeals, reverse the judgment of the circuit court, and remand to the circuit court for further proceedings.

## I. CAUSATION

We begin with the question of whether evidence of Clemmer's intoxication was relevant on the issue of causation. Plaintiff's argument that it was not proceeds as follows: (1) Clemmer admitted causation, therefore the only causal issue before the jury was whether Combined Transport's negligence also was a substantial factor in causing decedent's death; (2) whether Combined Transport's negligence was a cause of decedent's death is an independent question that does not depend on Clemmer's negligence; and therefore (3) why Clemmer drove erratically and struck decedent's pickup was irrelevant.

Combined Transport parts ways with plaintiff at the second step of plaintiff's argument. Combined Transport asserts that this court has not adopted and should not adopt a rule that the causation of each tortfeasor must be decided "in total isolation, separate and apart from the conduct of any co-tortfeasors, and without regard to all of the circumstances that contributed to the plaintiff's injury." To determine whether Combined Transport's conduct was a "substantial," as opposed to an "insignificant," factor in causing decedent's harm, Combined Transport contends that all of the evidence concerning the events that led to that harm, including Clemmer's intoxication, was admissible. Alternatively, Combined Transport argues, "[g]iven the nature and severity of Clemmer's speed and drunk driving, Combined Transport was entitled to introduce

3

evidence that Clemmer was going to cause the harm *no matter what.*"  (Emphasis in original.)  *Why* Clemmer drove erratically and struck defendant's pickup also was relevant for that purpose.

In making those arguments, both parties accept the premise that, when the negligence of multiple tortfeasors combines to produce harm, each tortfeasor whose negligence was a cause of the harm may be held liable.  *Hills v. McGillvrey*, 240 Or 476, 482-83, 402 P2d 722 (1965).  The parties also agree that it is factual, not legal cause, at issue in this case.  This court has abolished not only the terms but also the concepts of "proximate" and "legal" cause.  *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 340, 83 P3d 322 (2004); *Simpson v. Sisters of Charity of Providence,* 284 Or 547, 555, 588 P2d 4 (1978); *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 385 n 7, 528 P2d 522 (1974).  When a defendant's negligence is a factual cause of harm to the plaintiff, the defendant is subject to liability to the plaintiff as long as the harm that the plaintiff suffered was a reasonably foreseeable result of the defendant's negligence. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987).  Thus, the concept of causation (determined as a purely factual matter) is a separate concept from that of liability (determined by foreseeability and not by "proximate" or "legal" cause).

Although Combined Transport argued at trial that decedent's death was not a foreseeable consequence of Combined Transport's negligence, we do not understand Combined Transport to argue on appeal that Clemmer's intoxication was relevant to the issue of foreseeability or that the "substantial factor" test permits evidence of intoxication to determine "proximate" or "legal" cause.  Combined Transport acknowledges, correctly,

4

that the "substantial factor" test is a test of factual cause as explained by this court in *Sandford v. Chev. Div. Gen. Motors,* 292 Or 590, 606, 642 P2d 624 (1982):

> "Causation in Oregon law refers to causation in fact, that is to say, whether someone examining the event without regard to legal consequences would conclude that the allegedly faulty conduct or condition in fact played a role in its occurrence."

*See also Simpson*, 284 Or at 561 (approving jury instruction using "substantial factor" test to determine physical cause of harm); *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 606, 469 P2d 783 (1970) (using "substantial factor" when discussing "cause in fact" connection); *Babler Bros. v. Pac. Intermountain*, 244 Or 459, 463, 415 P2d 735 (1966) (noting that, in most negligence cases, "the factual inquiry whether the actor's conduct was a substantial factor in producing the harm is relatively uncomplicated"); *Dewey v. A.F. Klaveness & Co.*, 233 Or 515, 541, 379 P2d 560 (1963) (phrasing the causation standard as whether the defendant's conduct was a "substantial factor" in physically producing the injury).

What Combined Transport does argue is that the "substantial factor" test is intended to rule out, as a factual cause of harm, an act that is minimally significant in the causal chain of events. Combined Transport contends that the "substantial factor" test expresses a "concept of relativity" that permits a jury to consider the degree to which the conduct of a particular defendant was a factor in causing the harm and to relieve a defendant of liability if its conduct was insignificant or insubstantial when compared to the conduct of others. In support of that contention, Combined Transport cites the *Restatement (Second) of Torts* § 433 comment d (1977), which provides, in part:

5

"Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor."

Combined Transport does not demonstrate, however, that this court has adopted that comment, or that approach, as the law of Oregon.[1] Combined Transport begins with a citation to *McEwen*, 270 Or at 407-21, for the proposition that the conduct of multiple defendants must be analyzed together to determine whether each defendant's conduct was a cause of the plaintiff's harm. That proposition is correct. In *McEwen*, the court considered the conduct of both defendants in the causation analysis and explained that the plaintiff need not show that each defendant's negligence was

"sufficient to bring about plaintiff's harm by itself; it is enough that [each defendant] substantially contributed to the injuries eventually suffered by [the plaintiff.]"

*Id.* at 418. *McEwen* does not, however, stand for the additional proposition that, in every multi-defendant case, the jury is entitled to relieve a defendant of liability if its contribution to the plaintiff's injuries was insignificant when compared to the contribution of another defendant.

In *Smith v. J.C. Penney Co.*, 269 Or 643, 525 P2d 1299 (1974), the court rejected one codefendant's request for a jury instruction that would have permitted just such a comparison. In that case, one defendant, the owner of a service station, started a

---

[1] We note that the *Restatement (Second)* has been superseded by the *Restatement (Third) of Torts* (2005) and that the comment on which Combined Transport relies has been deleted.

6

fire in its waiting room, where the plaintiff happened to be standing. The second defendant supplied flammable fabric that was used to construct the coat that the plaintiff was wearing. *Id*. at 646. The court permitted the jury to consider the conduct of each defendant in determining whether the conduct of each or both contributed to the plaintiff's injuries. However, the court rejected the gas station's request for an instruction, pursuant to the *Restatement (Second) of Torts* § 433 comment d, that the jury should determine whether the fabric supplier's conduct had such a predominant effect in bringing about the injuries that it made the gas station's conduct "insignificant" and therefore not a cause of the plaintiff's injuries. *Id.* at 659. The court stated that the principle reflected in comment d was not applicable to the facts presented because "[t]he jury would have to find that [the gas station owner's] conduct was a substantial factor in causing an injury to the plaintiff of some extent." *Id.* at 660. The court did not adopt comment d as the law of Oregon or describe the circumstances in which it might be appropriate to permit a jury to relieve a defendant of liability because the effect of its conduct was relatively insignificant in the causal chain of events.

The other cases on which Combined Transport relies -- *Joshi v. Providence Health System*, 342 Or 152, 149 P3d 1164 (2006), and *Furrer v. Talent Irrigation District*, 258 Or 494, 466 P2d 605 (1971) -- were not multi-defendant cases. *Joshi* was a malpractice case in which the court held that the plaintiff was not permitted to adduce expert testimony that, if the defendant had taken certain actions, the decedent would have had a 30 percent greater chance of an improved outcome. The court was not called on to decide, and did not decide, that, even if the defendant's conduct was a cause of the

7

decendent's death, the defendant could not be held liable if its conduct was relatively insignificant.

In *Furrer*, the trial court instructed the jury as follows:

"'If you find from the preponderance of the evidence that defendant was negligent in at least one of the particulars charged in plaintiff's amended complaint, and further find from a preponderance of the evidence that the negligence of the defendant was a substantial factor in causing damage to plaintiff, the defendant would be liable for all the damages you find the plaintiff has suffered even though the acts of others might also have contributed to said damage.'"

258 Or at 510. One of the defendant's objections to that instruction was that the court had erred in failing to further define the term "substantial factor." In discussing that objection, the court stated that

"[t]he term 'substantial factor' expresses a concept of relativity which is difficult to reduce to further definiteness. Little, if anything, can be done with words to help the jury decide how much causal relationship must exist between conduct and damage before it constitutes a basis for recovery."

*Id*. at 511. The court concluded that further explanation would not materially enlighten the jury and that the trial court had not erred. *Id*. at 511-12. Like *Joshi*, *Furrer* did not present the issue of whether, in every multi-defendant case, a jury is entitled to compare the significance of the defendants' conduct.

It may be possible to imagine a circumstance in which one defendant's act is a factual cause of a plaintiff's harm in the sense that the harm would not have occurred absent the defendant's conduct, but in which that defendant's conduct is so insignificant, when contrasted with the conduct of a second defendant, that the first defendant's conduct should not be deemed a cause of the plaintiff's harm. However, for the reasons that we

8

shall explain, that circumstance is not presented here, and, therefore, we do not address it.[2]

In this case, both the conduct of Clemmer and the conduct of Combined Transport were substantial factors in contributing to decedent's death. Clemmer admitted that her conduct in driving her car into decedent's pickup with such force that leaks in its fuel system caused the pickup to ignite was a substantial factor in causing decedent's death. The jury found that Combined Transport's conduct in spilling a load of glass panes on the freeway caused decedent to bring his pickup to a stop. Based on expert testimony that, had decedent been moving at or close to the speed limit when Clemmer hit him, the impact of the collision would not have been as great, decedent's truck would not have ignited, and decedent would not have died, the jury found that Combined Transport's conduct also was a substantial factor in causing decedent's death. The additional fact that Combined Transport sought to prove -- that Clemmer was intoxicated at the time of the collision -- could not make Clemmer's conduct any more significant or Combined Transport's conduct any less significant in that causation analysis.

Combined Transport's primary argument -- that evidence of Clemmer's intoxication could establish that her conduct was more significant in the causation analysis -- confuses causation and negligence. In deciding whether a defendant's act is a factual cause of a plaintiff's harm, the effect of the defendant's conduct, and not whether

---

[2] For the position that cause is not a relative concept, see the *Restatement (Third) of Torts* § 26.

9

that conduct fell below the expected standard of care, is the relevant consideration. So, for instance, if Clemmer had been sober, driving at a reasonable rate of speed, keeping a proper lookout, and maintaining control of her car on the night of decedent's death, and if she had, nevertheless, collided with decedent's stationary pickup with such force that the truck ignited and decedent died, Clemmer's conduct would have been a cause of his death. That would be so even though Clemmer was not negligent and could not be held liable to plaintiff.

In this case, Clemmer admitted that her conduct -- colliding with decedent's pickup -- had the effect of killing him. Evidence that Clemmer was under the influence of alcohol when she engaged in that conduct could not make its causal effect any greater. Evidence that Clemmer was under the influence of alcohol could prove an additional way in which Clemmer deviated from the standard of care; it could not prove an additional way in which Clemmer contributed to the chain of events that caused decedent's death.

Combined Transport argues, alternatively, that evidence of Clemmer's intoxication was relevant to demonstrate that Combined Transport's conduct was less significant in the causation analysis. Combined Transport contends that it was entitled to prove that, because Clemmer was intoxicated, she would have collided with decedent's pickup and killed him, even if he had not been stopped on the freeway. In other words, Combined Transport contends that evidence of Clemmer's intoxication was relevant to prove that Combined Transport's conduct did not contribute to decedent's death at all; the collision and death would have occurred even if decedent had been travelling at or near the speed limit.

10

Although Combined Transport's alternative argument may have merit in the abstract, it fails on the record before us. Combined Transport did not proffer evidence that showed that, because Clemmer was intoxicated, she inevitably would have killed decedent, even if his pickup had not been stationary.

In the offer of proof that it submitted in opposition to plaintiff's motion *in limine*, Combined Transport asserted that a qualified expert physician would testify to Clemmer's blood alcohol level at the time of the collision, would testify that Clemmer was so intoxicated that she was in a "'near medical 'stupor,'" and would testify that "intoxication was the cause of the accident and if Clemmer were not intoxicated, the accident would not have occurred." Combined Transport asserted that two lay witnesses who were drinking alcohol with Clemmer before the collision would testify to the amount of alcohol that Clemmer drank before she got in her car and that they "believed that Clemmer should not [have been] driving due to her intoxication." Combined Transport also asserted that 11 lay witnesses saw Clemmer driving and also "believed that her erratic and reckless driving was the result of intoxication."

The trial court excluded all evidence of Clemmer's intoxication, but permitted the 11 lay witnesses to describe Clemmer's excessive speed and the erratic manner in which she drove. Many of those witnesses were themselves on the freeway, many in moving vehicles. Clemmer did not collide with any of them, although some testified that she "almost" did. The evidence that the court permitted did not demonstrate that Clemmer would have caused the collision and decedent's death even if decedent had been travelling at or near the speed limit. The evidence that the court excluded -- that

11

Clemmer was intoxicated when she drove at that excessive speed and in that erratic manner -- would not have supplied the missing connection.

Because the fact of Clemmer's intoxication would not have made Clemmer's conduct more significant or Combined Transport's conduct less significant in the causation analysis, it was not relevant to that issue. We proceed to the issue of whether evidence of Clemmer's intoxication was, nevertheless, relevant to the issue of the apportionment of fault under ORS 31.600.

## II. APPORTIONMENT OF FAULT

When a trier of fact determines that multiple defendants were negligent and that the conduct of each was a cause-in-fact of the plaintiff's harm, the trier of fact is then required to determine the relative fault of the defendants and to apportion the plaintiff's damages between them on that basis. ORS 31.600(2). Plaintiff concedes that, under *Sandford*, 292 Or at 600-08, the trier of fact is required to compare the degree to which each defendant deviated from the standard of care and is therefore "blameworthy." Plaintiff asserts, however, that in this case the only evidence of Clemmer's blameworthiness that the jury was entitled to consider was evidence material to the specifications of negligence that plaintiff pleaded and that Clemmer admitted. Plaintiff alleged, and Clemmer admitted, that Clemmer was negligent in driving at an excessive speed and in failing to keep a proper lookout and control of her car. Plaintiff did not allege that Clemmer was negligent in driving while intoxicated. Therefore, plaintiff contends, Clemmer's intoxication was not material to a comparison of the fault of the parties as framed by the pleadings.

Combined Transport counters that it filed two pleadings that permitted the introduction of evidence of Clemmer's intoxication on the issue of her relative fault: (1) its answer that included a general denial, and (2) a cross-claim against Clemmer for contribution that included affirmative allegations that Clemmer was negligent in driving under the influence of intoxicants. Alternatively, Combined Transport asks that, if this court decides that Combined Transport was required to affirmatively plead the fact of Clemmer's intoxication but that a cross-claim for contribution was not the appropriate vehicle to do so, we construe its cross-claim as an affirmative defense.

The Court of Appeals did not specifically address those pleading issues. The Court of Appeals simply concluded that evidence of Clemmer's intoxication was relevant to apportion fault between defendants. *Lasley*, 234 Or App at 20.

For the reasons that follow, we hold that, in a comparative negligence case, a defendant that seeks to rely on a specification of negligence not alleged by the plaintiff to establish a codefendant's proportional share of fault must affirmatively plead that specification of negligence and do so in its answer as an affirmative defense and not in a cross-claim for contribution. In the special circumstances that this case presents, we construe Combined Transport's cross-claim as an affirmative defense alleging that Clemmer deviated from the standard of care by driving under the influence of intoxicants and decide that evidence of Clemmer's intoxication was material and relevant.

We begin by discussing Combined Transport's argument that evidence of Clemmer's intoxication was admissible under its general denial. Combined Transport argues that Oregon's comparative fault statutes require the jury to compare the fault of the

13

parties and, therefore, make all facts relevant to that comparison admissible. ORS 31.600(2) requires that the trier of fact "compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled."[3] ORS 31.605 provides that "[w]hen requested by any party the trier of fact shall answer special questions indicating * * * [t]he degree of fault of each person specified in ORS 31.600(2)."[4] Because the comparative fault statutes require that comparison, we

---

[3]  ORS 31.600(2) provides:

"The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled. The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection. Except for persons who have settled with the claimant, there shall be no comparison of fault with any person:

"(a) Who is immune from liability to the claimant;

"(b) Who is not subject to the jurisdiction of the court; or

"(c) Who is not subject to action because the claim is barred by a statute of limitation or statute of ultimate repose."

[4]  ORS 31.605(1) provides:

"When requested by any party the trier of fact shall answer special questions indicating:

"(a) The amount of damages to which a party seeking recovery would be entitled, assuming that party not to be at fault.

"(b) The degree of fault of each person specified in ORS 31.600(2).

14

agree with Combined Transport that all evidence that may bear on that comparison is potentially relevant. That does not answer the question, however, whether a defendant that intends to rely on a specification of negligence not pleaded by a plaintiff must affirmatively plead those facts to make them admissible.

In this case, plaintiff alleged that Clemmer was negligent in driving at an excessive speed and in failing to maintain a proper lookout and control of her vehicle. Plaintiff also could have alleged, as a separate, additional, specification of negligence, that Clemmer was negligent in driving under the influence of intoxicants. *See Winn v. Gilroy*, 296 Or 718, 720, 681 P2d 776 (1984) (in wrongful death action, plaintiff alleged that defendant was negligent in several particulars, including driving while intoxicated); ORS 813.010 (making it a crime to drive under the influence of intoxicants). However, without pleading those ultimate facts in his complaint, plaintiff would not have been permitted to rely on evidence of those facts to establish Clemmer's liability. *See* ORCP 18 A (requiring plaintiff to plead 'ultimate facts constituting a claim for relief'); *Holger v. Irish,* 316 Or 402, 407, 851 P2d 1122 (1993) (pleader required to allege way in which defendant was negligent); *Rauw v. Huling and Sparks,* 199 Or 48, 64, 259 P2d (1953) (evidence incompetent to establish act of negligence plaintiff did not allege).

When a defendant seeks to avoid liability to the plaintiff by asserting that

The degree of each person's fault so determined shall be expressed as a percentage of the total fault attributable to all persons considered by the trier of fact pursuant to ORS 31.600."

the plaintiff or another tortfeasor should be held responsible for the plaintiff's damages, Oregon law also anticipates that the defendant will alternatively plead the facts on which it relies. When a defendant contends that the plaintiff was at fault, the defendant must affirmatively plead "comparative or contributory negligence" in its answer as an affirmative defense. ORCP 19 B.[5]

When a defendant contends that a tortfeasor who has not been joined in the action or with whom the plaintiff has settled was at fault, the defendant must file a third-party complaint against the tortfeasor or otherwise affirmatively allege the fault of that tortfeasor. ORS 31.600(3). That statute provides:

> "A defendant *who files a third party complaint* against a person alleged to be at fault in the matter, or *who alleges* that a person who has settled with the claimant is at fault in the matter, has the burden of proof in establishing [that the other person was at fault and that that fault was a contributing cause to injury or death]."

(Emphases added.)

---

[5] ORCP 19 B provides:

"In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, *comparative or contributory negligence*, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, unconstitutionality, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

(Emphasis added.)

When a defendant contends that a codefendant was at fault, the defendant also must affirmatively allege the unpleaded fault of the codefendant. As noted, ORCP 19 B requires that a party set forth affirmatively allegations of "comparative negligence." That requirement is not limited to allegations of the comparative negligence of a plaintiff. In addition, ORCP 19 B requires a defendant to set forth affirmatively "any other matter constituting an avoidance or affirmative defense."

A general denial is required to "fairly meet the substance of the allegations denied." ORCP 19 A. Therefore, a general denial does not put at issue facts that a plaintiff has not pleaded. *Deering v. Alexander*, 281 Or 607, 613, 576 P2d 8 (1978), describes the distinction between a general denial and an affirmative defense:

> "Under Oregon pleading rules, evidence which controverts facts necessary to be proved by plaintiff may be shown under a general denial. * * *. However, where the defendant desires to present evidence which does not directly controvert a fact necessary to be established by plaintiff, it is a new matter which must be pleaded as an affirmative defense."

(Internal citations omitted.) This court has defined "new matter" as consisting of "a statement of facts different from those averred by the plaintiff and not embraced within the judicial inquiry into their truth." *Hubbard v. Olsen-Roe Transfer Co.*, 110 Or 618, 627, 224 P 636 (1924). When a defendant seeks to avoid liability for the damages that a plaintiff claims by asserting that a codefendant engaged in more blameworthy negligent conduct not pleaded by the plaintiff, the defendant relies for that defensive posture on facts different from those averred by the plaintiff.

In combination, ORS 31.600(3) and ORCP 19 B establish that a defendant must, in some way, affirmatively plead a specification of negligence on which it intends

17

to rely, and that has not been pleaded by the plaintiff, to establish the fault of a codefendant. A general denial will not permit a defendant to adduce evidence of a codefendant's unpleaded negligence to avoid liability to the plaintiff.

We next address Combined Transport's argument that a defendant may affirmatively plead the negligence of a codefendant in a cross-claim for contribution. The current comparative negligence scheme provides that the proportional share of fault of each tortfeasor will be determined in the negligence action brought by the plaintiff. ORS 31.805(1).[6] However, that was not always the case.[7] In 1971, the contribution

---

[6] ORS 31.805(1) provides:

"The proportional shares of tortfeasors in the entire liability shall be based upon their relative degrees of fault or responsibility. In contribution actions arising out of liability under ORS 31.600, the proportional share of a tortfeasor in the entire liability shall be based upon the tortfeasor's percentage of the common negligence of all tortfeasors."

[7] In 1971, the legislature adopted the first comparative fault statute, which abolished contributory negligence as a complete bar to recovery. Or Laws 1971, ch 668, § 1 (Spec Sess). Under that statute, the plaintiff's fault was compared with that of the defendant, and the plaintiff's recovery was diminished by his or her own proportion of fault, provided that the plaintiff's fault was not greater than the defendant's.

In 1995, the legislature amended that statute to its current form. The legislature added a section that detailed the parties that were to be included in the comparison of fault and provided, in part:

"(2) The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled. The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection."

18

statute permitted contribution amongst co-tortfeasors based on their pro rata share of liability.[8] The legislature amended both the comparative fault and the contribution statutes in 1975.[9] The legislature amended the comparative fault statute to permit the

_Former_ ORS 18.470 (1997), _renumbered as_ ORS 31.600 (2003).

[8] The original version of _former_ ORS 18.440 provided, in part:

"(1) Except as otherwise provided in this Act, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

"(2) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability."

Or Laws 1971, ch 665, § 1 (Spec Sess).

[9] The amendments to the comparative fault statutes provided for a comparison of fault between any party, including multiple defendants:

"Contributory negligence shall not bar recovery in an action by any person * * * to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense."

Or Laws 1975, ch 599, § 1 (Spec Sess) (italicized portions removed, emphasis omitted).

The amendments to the contribution statute provided that a tortfeasor was liable in contribution only for its proportional, not its pro rata, shares. The relevant part of that statute provided:

"(1) Except as otherwise provided in this section, where two or more

trier of fact to compare the fault of all parties. The legislature amended the contribution statute to reflect that co-tortfeasors were entitled to contribution for any amount in excess of their "proportional share" of liability.

At that time, liability was joint and several, and a plaintiff could collect a judgment in its entirety from any one of the defendants. The defendants then could engage in litigation between themselves to allocate ultimate responsibility for payment. *See DeMaris v. Whittier*, 280 Or 25, 27, 569 P2d 605 (1977); *Case v. McKinnis*, 107 Or 223, 213 P 422 (1923) (illustrating proposition).

In 1995, the legislature again changed the comparative negligence scheme. Or Laws 1995, ch 696, §§ 1-5 (Spec Sess). The current law reflects those changes. Most significantly, for our discussion, the legislature eliminated joint and several liability. Or Laws 1995, ch 696, § 5 (Spec Sess).[10] Now, under ORS 31.610, liability is several only;

persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. There is no right of contribution from a person who is not liable in tort to the claimant.

"(2) The right of contribution exists only in favor of a tortfeasor who has paid more than his proportional share of the common liability, and his total recovery is limited to the amount paid by him in excess of his proportional share. No tortfeasor is compelled to make contribution beyond his own proportional share of the entire liability."

Or Laws 1975, ch 269, § 1 (Spec Sess) (italicized portions removed, emphases omitted).

[10]    *Former* ORS 18.485, *renumbered as* ORS 31.610, provided for joint and several liability. In 1987, the legislature amended that statute to provide that noneconomic damages were several only. Or Laws 1987, ch 774, § 7. In 1995, the

20

a tortfeasor is responsible only for its percentage of fault as determined in the action brought by the plaintiff.[11]

legislature amended the statute to abolish joint liability for all civil actions "arising out of bodily injury, death or property damage[.]"  Or Laws 1995, ch 696, § 5 (Spec Sess).

[11]    ORS 31.610 provides, in part:

"(1) Except as otherwise provided in this section, in any civil action arising out of bodily injury, death or property damage, including claims for emotional injury or distress, loss of care, comfort, companionship and society, and loss of consortium, the liability of each defendant for damages awarded to plaintiff *shall be several only and shall not be joint*.

"(2) In any action described in subsection (1) of this section, the *court shall determine the award of damages to each claimant in accordance with the percentages of fault determined by the trier of fact under ORS 31.605* and shall enter judgment against each party determined to be liable.  The court shall enter a judgment in favor of the plaintiff against any third party defendant who is found to be liable in any degree, even if the plaintiff did not make a direct claim against the third party defendant. *The several liability of each defendant and third party defendant shall be set out separately in the judgment, based on the percentages of fault determined by the trier of fact under ORS 31.605*.  The court shall calculate and state in the judgment a monetary amount reflecting the share of the obligation of each person specified in ORS 31.600(2). Each person's share of the obligation shall be equal to the total amount of the damages found by the trier of fact, with no reduction for amounts paid in settlement of the claim or by way of contribution, multiplied by the percentage of fault determined for the person by the trier of fact under ORS 31.605.

"(3) Upon motion made not later than one year after judgment has become final by lapse of time for appeal or after appellate review, the court shall determine whether all or part of a party's share of the obligation determined under subsection (2) of this section is uncollectible. If the court determines that all or part of any party's share of the obligation is uncollectible, the court shall reallocate any uncollectible share among the other parties.  The reallocation shall be made on the basis of each party's respective percentage of fault determined by the trier of fact under ORS

When the legislature made that change, it did not amend or repeal the contribution statute. Thus, under Oregon's current comparative negligence scheme, no tortfeasor is liable for more than its percentage of fault, and that percentage of fault is determined in the original negligence action brought by the plaintiff. ORS 31.610(2); ORS 31.805. A defendant cannot bring a contribution action to seek a different

31.605. The claimant's share of the reallocation shall be based on any percentage of fault determined to be attributable to the claimant by the trier of fact under ORS 31.605, plus any percentage of fault attributable to a person who has settled with the claimant. Reallocation of obligations under this subsection does not affect any right to contribution from the party whose share of the obligation is determined to be uncollectible. Unless the party has entered into a covenant not to sue or not to enforce a judgment with the claimant, reallocation under this subsection does not affect continuing liability on the judgment to the claimant by the party whose share of the obligation is determined to be uncollectible.

"(4) Notwithstanding subsection (3) of this section, a party's share of the obligation to a claimant may not be increased by reason of reallocation under subsection (3) of this section if:

"(a) The percentage of fault of the claimant is equal to or greater than the percentage of fault of the party as determined by the trier of fact under ORS 31.605; or

"(b) The percentage of fault of the party is 25 percent or less as determined by the trier of fact under ORS 31.605.

"(5) If any party's share of the obligation to a claimant is not increased by reason of the application of subsection (4) of this section, the amount of that party's share of the reallocation shall be considered uncollectible and shall be reallocated among all other parties who are not subject to subsection (4) of this section, including the claimant, in the same manner as otherwise provided for reallocation under subsection (3) of this section."

(Emphases added.)

22

determination of its percentage of fault. A contribution action serves only to permit a defendant who has "paid more" than its "proportional share of the common liability" to obtain contribution from another person who is also liable for the same injury or death. ORS 31.800(2).[12]

Because a defendant's liability is several only and the defendant is not obligated to pay more than its proportional share of liability, it seems that the circumstances in which a defendant will pay more than its proportional share and, therefore, have a reason to seek contribution from a codefendant will be quite limited. However, ORS 31.800(2) continues to permit a claim for contribution should those circumstances exist. And, should those circumstances exist, a defendant could use a cross-claim to assert a claim for contribution against a codefendant. ORCP 22 B defines a cross-claim as a claim "existing in favor of the defendant asserting the cross-claim and against another defendant, between whom a separate judgment might be had in the action[.]" A defendant who "has paid" its proportional share could seek a separate judgment against a codefendant for the excess amount of its payment and do so by means

---

[12]    ORS 31.800(2) provides:

"*The right of contribution exists only in favor of a tortfeasor who has paid more than a proportional share of the common liability, and the total recovery of the tortfeasor is limited to the amount paid by the tortfeasor in excess of the proportional share.* No tortfeasor is compelled to make contribution beyond the proportional share of the tortfeasor of the entire liability."

(Emphasis added.)

23

of a cross-claim.

A cross-claim for contribution is not, however, perfectly adapted for use by defendant to allege that a co-defendant is at fault for the plaintiff's damages and should be held liable, not to the defendant, but to the plaintiff. In that instance, the defendant does not seek a separate judgment against the codefendant as required by ORCP 22 B. Even so, the comparative negligence statutes indicate that such a pleading may be permitted. As noted, when a plaintiff does not join a tortfeasor as a defendant, the comparative negligence statutes permit the named defendant to file a third-party complaint against the tortfeasor. ORS 31.600(3). In that instance, the third-party defendant will not be liable to the defendant but, potentially, will be liable to the plaintiff. However, ORCP 22 C(1) restricts third-party claims to circumstances in which a third party "is or may be liable to the third party plaintiff." Thus, although ORCP 22 C(1) indicates that a third-party claim is designed for the circumstance in which the third-party defendant is or may be liable to the third-party plaintiff, ORS 31.600(3) permits a defendant to file a third-party complaint to allege that a third-party defendant is at fault and potentially liable to the plaintiff. ORS 31.600(2) specifically provides that the fact that a plaintiff is not a party to the third-party claim does not prevent the trier of fact from comparing the fault of the third-party defendant in the action brought by the plaintiff.[13]

---

[13] ORS 31.600(2) provides that "[t]he failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact[.]"

24

Thus, the legislature anticipated that a defendant could file a third-party complaint against a tortfeasor who would not be liable to the defendant but who could, instead, be liable to the plaintiff. Whether the legislature intended to permit a defendant to make a cross-claim against a codefendant who would not be liable to the defendant but, instead, would be liable to the plaintiff, is unclear.

Neither an affirmative defense nor a cross-claim for contribution is ideally designed as a mechanism for a defendant to plead the negligence of a codefendant that is not pleaded by the plaintiff and thereby to avoid or reduce the defendant's liability to the plaintiff. An affirmative defense is directed at a plaintiff, not at a codefendant. A cross-claim for contribution is directed at a codefendant and is not designed to avoid liability to a plaintiff. On balance, however, we think that an affirmative defense is the pleading mechanism that a defendant should use. The use of an affirmative defense is consistent with the terms of ORCP 19 B, whereas the use of a cross-claim for contribution would require modification of the terms of ORCP 22 B(1) and ORS 31.800. We hold that a defendant that does not allege that it has paid more than its proportional share of liability and that does not seek a separate judgment against a codefendant for the amount of that excess payment, but that instead seeks to avoid paying the full damages that a plaintiff has alleged on the basis that a codefendant is more at fault in a way that was not alleged by the plaintiff, must plead the specification of negligence on which the defendant relies as an affirmative defense in its answer to the plaintiff's complaint and not in a separate cross-claim against the codefendant.

In this case, Combined Transport did not allege in its cross-claim that it had

paid more than its proportional share of liability or seek a money judgment against Clemmer. Combined Transport alleged that Clemmer was driving under the influence of intoxicants and sought to have Clemmer "contribute such amount as is proportionate to her share." Combined Transport should have included those allegations in its answer as an affirmative defense. Because it did not, Combined Transport requests that we construe its cross-claim as an affirmative defense under ORCP 12. We now turn to that argument.

Important to resolution of that issue is an understanding of the pleadings that Combined Transport filed and the rulings that the trial court made. In its answer to plaintiff's complaint, Combined Transport included an affirmative defense and two cross-claims. In the affirmative defense, Combined Transport alleged that Clemmer had pleaded guilty to second-degree manslaughter and driving under the influence of intoxicants and had been determined to have recklessly killed decedent and to have been legally intoxicated. Therefore, Combined Transport alleged, both plaintiff and Clemmer were precluded from claiming that Clemmer was not negligent, reckless, or intoxicated. In its first cross-claim for common-law indemnity, Combined Transport alleged that plaintiff's damages were caused by Clemmer's "active and gross negligence and criminal conduct" in driving while intoxicated. Combined Transport alleged that its negligence, if any, was passive and that, because Clemmer was primarily responsible for decedent's death, Combined Transport was entitled to common-law indemnity from Clemmer. In its second cross-claim for contribution, Combined Transport alleged that the negligent conduct of Clemmer contributed to plaintiff's damages and that Combined Transport was

26

entitled to recover from Clemmer an amount equal to Clemmer's proportional share of fault, as determined by the court.

Plaintiff filed a motion to strike Combined Transport's affirmative defense and cross-claims or, alternatively, to bifurcate any issues relating to Clemmer's reckless or intoxicated behavior to a separate trial. The court granted the motion to strike the affirmative defense.[14] The parties stipulated that the indemnity cross-claim would be tried to the court and that no evidence would be admissible on that claim that would not be admissible on the underlying complaint. On that basis, the trial court deferred ruling on the motion to strike the cross-claim for indemnity.

The trial court then inquired as to the function of Combined Transport's cross-claim for contribution. Combined Transport responded, as we understand it, that the jury would be required to receive all of the evidence of the relative fault between the defendants, including recklessness and intoxication, and after it did so, a contribution claim would only arise if there was a post-judgment reallocation of obligations pursuant to ORS 31.610(3).[15] Otherwise, Combined Transport indicated, "as far as affecting the trial, other than supplementing -- giving a defendant the opportunity to supplement the

---

[14]     Combined Transport does not assign error to that ruling.

[15]     Under ORS 31.610(3), if a tortfeasor cannot pay its proportional share of the judgment, that portion of the judgment can be reallocated to the other tortfeasors under certain circumstances. Those tortfeasors who had to pay more than their proportional share after the reallocation have an action for contribution from the nonpaying tortfeasor. Therefore, the claim for contribution does not accrue until the payment has been reallocated.

27

claims of relative fault in the case, I don't believe that it plays an independent role with the jury." Plaintiff argued that a cross-claim for contribution was premature because it only exists in favor of a tortfeasor who has paid more than a proportional share of the common liability. "It is not," plaintiff argued, "a platform for changing the pleadings." Saying, "I think that's right," the trial court granted plaintiff's motion to strike Combined Transport's second cross-claim for contribution.

Later in the pretrial proceedings, after the trial court had ruled that evidence of Clemmer's intoxication was not relevant and granted plaintiff's motion *in limine* precluding admission of that evidence, Combined Transport filed a motion for leave to file an amended answer with an amended cross-claim for contribution. In the amended cross-claim that it proffered with its motion, Combined Transport alleged that Clemmer was negligent in seven particulars, including driving under the influence of intoxicants. Combined Transport also alleged that Clemmer should be required to "contribute such amount as is proportionate to her share[.]" In considering Combined Transport's motion, the court explained that, when it had granted plaintiff's earlier motion to strike Combined Transport's cross-claim, it had done so for a reason that "had nothing to do with the pleading of the contribution claim, but more had to do with the role that a contribution claim plays or doesn't play in the context of this litigation, where the jury is going to be deciding the relative negligence or fault, * * * if any, between the two defendants." The court said that, because Clemmer had admitted negligence and causation, she was 100 percent responsible for plaintiff's damages, less any responsibility that the jury assessed to Combined Transport. Therefore, the court reasoned, there was no need for the cross-

28

claim that Combined Transport proffered.  Combined Transport responded that it was seeking to file the amended pleading "so that we have a clear pleading setting forth exactly what it is that we would intend to plead and prove in this case."  The court then brought the discussion to a close, stating that it was denying Combined Transport's motion to amend its cross-claim because "the jury is going to be answering this question anyway."

The case then proceeded to trial on plaintiff's complaint, Clemmer's answer admitting negligence and causation, and Combined Transport's answer denying negligence and causation and asserting a cross-claim for indemnity to be tried to the court on the same evidence relevant to the trial of the issues presented by the complaint.[16]  On appeal to the Court of Appeals, Combined Transport assigned error to the ruling of the trial court striking its cross-claim.  Without explicitly addressing that issue, the Court of Appeals decided that evidence of Clemmer's intoxication was relevant to the issue of apportionment of fault.

ORS 31.600 requires the jury to compare the fault of the parties, but, for the reasons that we have explained, a defendant who wishes to have the jury consider the unpleaded negligence of a codefendant in making that comparison is required to plead the facts establishing that negligence.  The fact that the codefendant has accepted liability based on the facts alleged by the plaintiff does not eliminate that requirement.  Thus, in

---

[16]    On October 2, 2007, in a post-trial hearing, the trial court denied the cross-claim for indemnity, and Combined Transport does not challenge that ruling.

29

this case, to have the jury consider evidence of Clemmer's intoxication in comparing the fault of the parties, either plaintiff or Combined Transport had to allege those facts. Plaintiff did not do so, and the pleading burden fell on Combined Transport.

Combined Transport did not use the pleading that we now hold was required -- an affirmative defense. However, Combined Transport did allege, in its cross-claim, the fact of Clemmer's intoxication and its theory that Clemmer's intoxication should be considered in determining Clemmer's proportional share of liability. Combined Transport was incorrect in selecting the pleading that it was required to use, but was correct in recognizing that it must plead those allegations to make Clemmer's intoxication relevant to the jury's determination of comparative fault. The trial court was correct that a cross-claim for contribution was premature, but it was incorrect that there was no role for Combined Transport's pleading alleging negligence by Clemmer that was not pleaded by plaintiff. A pleading was necessary to make Clemmer's intoxication material and to allow the jury to consider that conduct in comparing the fault of Clemmer and Combined Transport.

We think that, in the unique circumstances of this case, the cross-claim that Combined Transport proffered fulfilled the function of an affirmative defense, *viz.*, to put the plaintiff on notice of the theory and facts comprising the defendant's defense. *See Ritter v. Beals et al.*, 225 Or 504, 517-18, 358 P2d 1080 (1961) (affirmative defense must inform plaintiff of what defendant intends to prove). ORCP 12 requires a court, "in every stage of an action," to "disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." *See also Bank of Calif.*

30

*Nat. Ass'n v. Schmaltz*, 139 Or 163, 171, 9 P2d 112 (1932) (courts not controlled by construction that parties place on pleadings). At the time of trial in this case, the pleading that Combined Transport was required to use was unclear, and Combined Transport's cross-claim apprised plaintiff of the facts on which it intended to rely and the purpose of those facts. In that narrow circumstance, the defect in designating the pleading as a cross-claim rather than as an affirmative defense did not affect the substantial rights of plaintiff. Because Combined Transport affirmatively alleged the fact of Clemmer's intoxication and its theory that Clemmer's intoxication should be used in determining the relative fault of the parties, the evidence that Combined Transport proffered on that issue was relevant on the issue of the comparative fault of the defendants and the trial court erred in excluding it.

However, for the reasons we have stated, the evidence of Clemmer's intoxication was not relevant on the issues of causation, liability, or damages. Therefore, we remand the case for a new trial limited to the degree of fault of each defendant "expressed as a percentage of the total fault" attributable to each defendant. ORS 31.605(1)(b).

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

31

DE MUNIZ, C. J., dissenting.

Evidence adduced in the course of a civil trial does not arise in a vacuum. It is circumscribed by the content of the parties' respective pleadings, a fact that requires litigants in Oregon to plead the ultimate facts on which their claims are based. *See* ORCP 18 A (pleadings must contain a "plain and concise statement of the ultimate facts constituting a claim for relief "); *see also Welch v. Bancorp*, 296 Or 208, 221, 675 P2d 172 (1984) ("The necessity of pleading ultimate facts retains the present Oregon requirements of pleading facts at a fairly specific level.") (internal quotation marks omitted). As explained in greater detail below, the pleadings -- including those that set out affirmative defenses -- declare and control the issues to be determined at trial, at once providing the parties with notice concerning the key facts that each side will attempt to prove while establishing boundaries for the trial court in determining the relevance of the evidence offered. Here, Combined Transport's deficient pleading -- not trial court error -- was the only factor that kept evidence of Clemmer's intoxication from the jury. The majority's efforts to say otherwise not only does a disservice to the trial court's expertise, but effectively kicks one hundred years of Oregon pleadings law to the curb without explanation. Because defendant's cross-claim for contribution cannot be construed as an affirmative defense, I respectfully dissent.

The majority agrees with the basic premise that a cross-claim for contribution cannot be viewed as an affirmative defense. Indeed, it writes:

> "We hold that a defendant that does not allege that it has paid more than its
> proportionate share of liability and that does not seek a separate judgment
> against a co-defendant for the amount of that excess payment, but that

1

> instead seeks to avoid paying the full damages that a plaintiff has alleged on the basis that a co-defendant is more at fault in a way that was not alleged by the plaintiff, must plead the specification of negligence on which the defendant relies as an affirmative defense in its answer to the plaintiff's complaint and not in a separate cross-claim against the co-defendant."

___ Or at ___ (slip op at ___ ). The majority goes on to acknowledge that Combined Transport should have included the allegations of Clemmer's intoxication in its answer as an affirmative defense. ___ Or at ___ (slip op at ___ ). The majority, however, nevertheless concludes that, at the time, that particular legal tenet was "unclear" as a matter of Oregon law. ___ Or at ___ (slip op at ___ ). The resulting lack of clarity, the majority posits, created "unique circumstances" that now require this court to transmogrify Combined Transport's cross-claim for contribution into an affirmative defense under ORCP 12. ___ Or at ___ (slip op at ___ ). At the end of the day, that decision is, for the reasons that follow, simply wrong.

### Oregon's Pleading Requirements Are Clear

As a threshold matter, it is important to note that there is little that is unclear about the Oregon pleading requirements at issue here, or the consequences for failing to adhere to those rules. In this state, a party's pleadings matter and have for some time:

> "It is a theory long in use in the practice of law that the pleadings declare and control the issues to be determined and the relations that the parties bear to each other."

*Warner v. Synnes*, 114 Or 451, 459-60, 235 P 305 (1925). *See also Wold v. City of Portland,* 166 Or 455, 470-71, 112 P 2d 469 (1941) (citing *Warner* for the proposition that an action tried on pleadings of negligence could not be overturned on appeal under

2

unpleaded theory of nuisance). In particular, a party's pleadings set the boundaries for evidence that can be admitted at trial. *See Cutsforth v. Kinzua Corp.*, 267 Or 423, 428-29, 517 P2d 640 (1973) (plaintiff could not present evidence to support allegation of negligence that was properly stricken from the pleading); Laird C. Kirkpatrick, *Oregon Evidence* § 401.03, 141-42 (5th ed 2007) (relevance depends on allegations pleaded by the parties).

A fundamental component of the overall pleading process is, of course, the pleading of affirmative defenses. In *Ritter v. Beals*, 225 Or 504, 517-18, 358 P2d 1080 (1961), this court outlined the purpose of such pleadings:

> "A pleading of an affirmative defense has two functions. It must inform the plaintiff of facts which the defendant will prove. It must also give the trial court a pleading foundation for the taking of testimony and ultimately for instructing the jury."

A defendant who seeks to extend the boundaries of relevancy initially established by a plaintiff's pleadings must affirmatively set forth in its answer the additional facts on which he or she seeks to rely, thereby making the facts relevant for trial purposes.

In Oregon, failure to do so has long had negative outcomes for those seeking to advance unpleaded defenses on appeal. In 1905, for example, the Oregon Supreme Court decided *Thayer v. Buchanan*, 46 Or 106, 79 P 343 (1905), an action to foreclose on a mortgage. In his response to the complaint against him, the defendant had asserted that part of the principal covered by the mortgage had been fraudulently confessed without his authorization or knowledge by the plaintiff representing himself as the defendant's lawyer in a separate matter. The trial court found in favor of the plaintiff,

3

and on appeal, the defendant took a different tack, arguing that the mortgage note encompassed certain usurious elements that were illegal. In affirming the trial court's judgment, this court concluded that the pleadings below were dispositive with regard to the validity of the newly proffered defense:

> "Some usurious items may have been included in the settlement, and it looks very much as if such was the case, which would not in themselves support the note; *but, as we have previously had occasion to observe, the pleadings set out no such defense, and we are therefore powerless to help the defendant, even on account of such demands*."

*Id.* at 110 (emphasis added). *See also Wolf v. Hougham*, 62 Or 264, 125 P 301 (1912) (in contract action for sale of hops, trial court instruction disregarding unpleaded defense was correct; defendant could not avail himself of defense not clearly stated in his answer, although it appeared by his evidence).

In a nutshell, what was clear shortly after the turn of the last century remains clear today: Combined Transport was obliged to plead Clemmer's intoxication as an affirmative defense in order to have the jury consider that evidence. The process for doing so is not a secret. In *Hawkins v. City of La Grande*, 315 Or 57, 62-63, 843 P2d 400 (1992) this court outlined the provisions for pleading an affirmative defense:

> "The relevant pleading rules call for defenses to be pleaded. Oregon Rules of Civil Procedure (ORCP) 13 A provides:
>
> > "'The pleadings are the written statements by the parties of the facts constituting their respective claims and defenses.'
>
> "ORCP 19 B provides, in part:
>
> > "'In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, * * * and any other matter constituting an avoidance or affirmative defense. * * *'

4

"ORCP 21 A provides, in part:

> "'*Every* defense, *in law or fact,* to a claim for relief in any pleading, whether a complaint, counterclaim, cross-claim or third party claim, *shall be asserted* in the responsive pleading thereto * * *. (Emphasis added.)'"

Despite the roadmap provided for it in *Hawkins*, however, Combined Transport did not plead an affirmative defense under ORCP 19 B. It opted, instead, to submit a cross-claim for contribution, which the trial court struck as premature. The majority apparently concludes that the trial court erred in doing so; I disagree.

**The Prejudgment Cross-claim For Contribution Was Properly Stricken**

A cross-claim for contribution is not a substitute for a properly pleaded affirmative defense. Today, the right to seek contribution is largely a relic of Oregon's past as a state that once recognized joint and several liability. After Oregon abandoned that doctrine in favor of several liability for claims involving bodily injury, death, and property damage,[1] the applicability of a contribution claim has since been confined to a limited set of circumstances. In that regard, ORS 31.800(2) provides:

> "The right of contribution exists only in favor of a tortfeasor who has paid more than a proportional share of the common liability, and the total recovery of the tortfeasor is limited to the amount paid by the tortfeasor in excess of the proportional share. No tortfeasor is compelled to make contribution beyond the proportional share of the tortfeasor of the entire liability."

Under the statute, the gravamen of a contribution action is that a tortfeasor "has paid"

---

[1] ORS 31.610(1) provides generally that, for multiple defendants in such cases, "the liability of each defendant for damages awarded to plaintiff shall be several only and shall not be joint."

5

more than his or her "proportional share" of damages. Faced with that circumstance, a tortfeasor may enforce contribution in either a "separate action" regardless of whether judgment has been entered or not, ORS 31.810(1), or by motion upon notice to all the parties after "a judgment has been entered in an action against two or more tortfeasors for the same injury or wrongful death," ORS 31.810(2). As a result, a contribution claim has nothing to do with determining the fault of the parties; it is solely a procedural mechanism to allow damages to be collected fairly.

Taken together, ORS 31.800 and ORS 31.810 support the proposition that an action for contribution is relevant prior to judgment only in a separate proceeding or, if undertaken in the same proceeding, after a judgment has been entered. At the time that Combined Transport sought to have its cross-claim made part of the pleadings in this case, however, no judgment had been rendered and no damages had been paid; indeed, the trial on plaintiff's claims had yet to begin. Consequently, it was altogether appropriate for the trial court to strike the cross-claim as premature. Combined Transport's subsequent attempt to amend its contribution request did nothing to change the premature nature of that claim: At the end of the day it remained a pretrial attempt to initiate a matter that could only be brought post-judgment or in a separate proceeding. Consequently, it warranted the same response. The trial court did not err in either ruling.

The majority, of course, has a different view. It ultimately concludes that the only problem with Combined Transport's cross-claim for contribution was its defective designation as such rather than as an affirmative defense. ___ Or at ___ (slip op at ___ ). It sets about to fix that problem by resort to ORCP 12 B, which provides:

6

> "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."

*See* ___ Or at ___ (slip op at ___ ). The majority is untroubled by the resulting transformation, concluding that Combined Transport's contribution claim effectively "fulfilled the function of an affirmative defense, *viz.*, to put the plaintiff on notice of the theory and facts comprising the defendant's defense." ___ Or at ___ (slip op at ___ ). I again disagree.

## This Court is Precluded From Construing Combined Transport's Cross-claim For Contribution As An Affirmative Defense

It is important to understand that the majority's reliance on ORCP 12 in this case is incorrect as a matter of Oregon law. As a general rule, the Oregon Rules of Civil Procedure are applicable only in the trial courts. In *Lincoln Loan Co. v. City of Portland*, 335 Or 105, 110, 59 P3d 521 (2002), this court held that "'the ORCP apply *only in trial courts*.'" (quoting *McCarthy v. Oregon Freeze Dry, Inc.,* 327 Or 84, 89, 957 P2d 1200, *adh'd to on recons,* 327 Or 185, 957 P2d 1207 (1998)); *see also Robinson v. Lamb's Wilsonville Thriftway,* 332 Or 453, 459, 31 P3d 421 (2001) (stating that the rules of civil procedure "are rules to be applied to actions in *trial courts*") (emphasis in original). Although rules of civil procedure have indeed been incorporated into this court's procedural framework, we have done so only after expressly making those provisions part of the Oregon Rules of Appellate Procedure. *See, e.g.*, ORAP 1.40 (expressly adopting the provisions of ORCP 17); ORAP 8.05 (doing the same for ORCP 34). We have yet to do the same with regard to ORCP 12.

7

Even if it was proper for the court to invoke ORCP 12 B in this case -- and it is not -- the majority nevertheless misapplies the rule here.  Under its plain text, the pleading problem to be corrected by ORCP 12 B must constitute an "error or defect"; neither are present here.  In *Mulier v. Johnson*, 332 Or 344, 29 P3d 1104 (2001), the defendant had moved for summary judgment but had failed to allege a right to attorney fees under ORCP 68 C(2)(b).  This court held that the defendant's complete failure to plead a right to attorney fees was not an "error or defect" under ORCP 12 B:

> "As we have explained, the words 'error' and 'defect' in ORCP 12 B reflect the legislature's intent that a party must attempt to comply with the mandatory requirements of the rules of civil procedure if that party is to benefit from the provisions of ORCP 12 B.  *A complete failure to allege the right to attorney fees in a motion under ORCP 68 C(2)(b) does not demonstrate an attempt to comply with the requirements of that rule.*"

*Id*. at 350 (internal citation omitted; emphasis added).  The same is true in this case.  If a party wishes to present evidence of comparative negligence as an affirmative defense, ORCP 19 B requires such a pleading.  One's abject failure to do so might be categorized as many things but, as *Mullier* makes clear, it is not a defect that can be corrected by ORCP 12 B.

In sum, the trial court did not err in this matter.  Combined Transport's cross-claim for contribution was not relevant at the time it was brought, and the trial court correctly granted plaintiff's motion to strike.  While ORCP 12 A directs that "[a]ll pleadings shall be liberally construed with a view of substantial justice between the parties," the majority has resurrected and rewritten the stricken pleading at issue here -- not construed it -- in order to make out an affirmative defense in this matter.  The

8

majority errs in doing so.  Consequently, I would affirm the judgment.

For the reasons cited above, I respectfully dissent.

Durham, J., joins this dissenting opinion.